## WELLS FARGO BANK, NA v NULL

Docket No. 312485. Submitted February 4, 2014, at Lansing. Decided
March 6, 2014, at 9:00 a.m.

Wells Fargo Bank, NA, brought an action in the Cass Circuit Court
against Auto-Owners Insurance Company and Elizabeth A. Null,
claiming that, as the mortgagee of Null's home, Wells Fargo was
entitled to any insurance proceeds Null recovered from Auto-
Owners in connection with the fire that destroyed her home in
2009. The home was owned by Null's brother-in-law, Lonnie Null,
who had bought it with a mortgage from Wells Fargo and insured
it under a policy issued by Auto-Owners. In a previous separate
proceeding, Elizabeth Null had named Wells Fargo as a defendant
in her suit for breach of contract against Auto-Owners after it
denied her insurance claim for the fire damage to her home on the
ground that Lonnie Null, the named insured, did not reside there,
which was a requirement under the policy. The trial court had
granted summary disposition for the defendants on this basis, and
the Court of Appeals affirmed. *Null v Auto-Owners Insurance Co*,
unpublished opinion per curiam of the Court of Appeals, issued
October 22, 2013 (Docket No. 308473). Auto-Owners argued that
this prior ruling supported its motion for summary disposition in
the instant case, but Wells Fargo asserted that the ruling did not
bar its claim because its rights were governed by a clause in Lonnie
Null's policy that gave coverage to the mortgagee in certain
circumstances, even if the insured himself would not have been
covered. The court, Michael E. Dodge, J., granted Auto-Owners'
motion for summary disposition and dismissed all Wells Fargo's
claims with prejudice. Wells Fargo appealed.

The Court of Appeals *held*:

1. The issue whether the residence was covered under the
policy was barred from relitigation by the doctrine of collateral
estoppel because this exact issue was actually litigated and deter-
mined by a valid and final judgment, all three parties had a full and
fair opportunity to litigate the issue in the previous proceeding,
and, had the trial court ruled against Auto-Owners, Auto-Owners
would have been bound by that adverse decision.

2. The trial court erred by granting summary disposition to Auto-Owners. The standard mortgage clause is a separate contract between Wells Fargo and Auto-Owners that, by its plain language, affords coverage to the mortgagee under the circumstances presented, even though coverage was denied to the insured. Further, the language of the policy itself provided that a denial of the insured's claim would not apply to a valid claim of the mortgagee as long as the mortgagee complied with certain conditions.

3. The trial court's order in the previous related litigation did not bar Wells Fargo's claim in this case under the doctrine of judicial estoppel because Wells Fargo did not take a wholly inconsistent position in the prior proceeding. Further, Wells Fargo's claim was not barred by laches because there was no evidence that Auto-Owners was prejudiced by the delay between that case and this one or by the resolution of the claims in separate actions. Accordingly, the case was remanded for the trial court to determine whether there was a genuine issue of material fact about whether Wells Fargo complied with the policy requirements.

Reversed and remanded for further proceedings.

INSURANCE — STANDARD MORTGAGE CLAUSES — DENIAL OF COVERAGE TO INSURED.

A standard mortgage clause in a residential insurance policy issued by an insurer to an insured operates as a separate contract that affords coverage to the mortgagee, even when coverage is denied to the insured in a context other than the application of a policy exclusion and even when the act or neglect of the insured occurred before the policy was issued.

*Plunkett Cooney* (by *Jeffrey C. Gerish, Hilary A. Ballentine*, and *Matthew J. Boettcher*) for Wells Fargo Bank, NA.

*Yeager, Davison & Day, PC* (by *Phillip K. Yeager*) for Auto-Owners Insurance Company.

Before: BOONSTRA, P.J., and CAVANAGH and FITZGERALD, JJ.

BOONSTRA, P.J. In this insurance dispute, plaintiff Wells Fargo Bank, N.A., appeals by right the September 4, 2012 order of the trial court granting summary

disposition in favor of defendants Elizabeth A. Null and Auto-Owners Insurance Company under MCR 2.116(C)(10).[1] Specifically, the trial court ruled that Wells Fargo, the mortgagee, was not entitled to coverage under an insurance policy issued by Auto-Owners to the mortgagor, Lonnie Null, Elizabeth's brother-in-law. The trial court also held that a previous order, entered in an earlier case brought by Elizabeth against Auto-Owners and Wells Fargo, which barred her claims because the property was not covered under the Auto-Owners policy, also barred Wells Fargo's claims in this case. We reverse the trial court's award of summary disposition in favor of Auto-Owners, and remand for further proceedings consistent with this opinion.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

The underlying insurance dispute in this case arose from an April 11, 2009 fire that destroyed a residence located at 17285 Williamsville Street, Cassopolis, Michigan. In 1994, Lonnie purchased the residence and obtained from Auto-Owners a homeowners insurance policy covering the residence (hereinafter "the policy"). Wells Fargo held the note on the residence. Accordingly, Lonnie was the mortgagor of record and Wells Fargo the mortgagee. In 1997, Lonnie executed a "Residential Real Estate Contract" with Elizabeth; however, the mortgage was never assigned to Elizabeth and the Auto-Owners policy remained in Lonnie's name. Lonnie stayed in the residence with Elizabeth sporadically for a few days or weeks at a time, through approximately 2004. However, when the fire occurred in April 2009, Lonnie had not lived in the residence for several years.

---

[1] The trial court's grant of summary disposition in favor of Elizabeth is not at issue on appeal, and we do not disturb that ruling.

In fact, evidence of record indicates that Lonnie was incarcerated in 2008 and had not resided or stayed in the home since that time.

After the fire, Elizabeth filed a claim for insurance benefits from Auto-Owners under the policy that was then in effect for the policy term of December 22, 2008 to December 22, 2009. In a letter dated April 21, 2009, Auto-Owners advised Wells Fargo, as the mortgagee, that fire had damaged the residence and that a claim had been filed. As Lonnie remained the named insured under the policy, the letter indicated that Lonnie, not Elizabeth, was the individual who suffered damages resulting from the fire. The letter also informed Wells Fargo that, as the mortgagee, its name would be included on any insurance checks, in accordance with Auto-Owners's policy.

In late 2009, Auto-Owners denied Elizabeth's insurance claim for damage to the residence and her personal property on the ground that Lonnie, who was the named insured, did not reside there, which was a requirement under the policy. Specifically, the insurance policy provided in relevant part:

a. **Coverage A—Dwelling**

**(1) Covered Property**

**We** cover:

**(a) your** dwelling located at the **residence premises** including structures attached to that dwelling. Thisdwelling [sic] must be used principally as **your** private residence.

\* \* \*

c. **Coverage C—Personal Property**

**(1) Covered Property**

**We** cover:

(a) personal property owned or used by any **insured** anywhere in the world including property not permanently attached to or otherwise forming a part of realty.

(b) at **your** option, personal property owned by others while it is in that part of the **residence premises** occupied by any **insured**.

Additionally, the policy defined "insured" as:

**a. you;**

**b.** your **relatives**; and

**c.** any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

"Relative" was defined as "a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**." "You" or "your" was defined as the "first named insured," which was Lonnie. Finally, "residence premises" was defined as "the one or two family dwelling where **you** reside . . . ."

### A. THE COMPANION CASE

Elizabeth sued Auto-Owners for breach of contract in March 2010, naming both Auto-Owners and Wells Fargo as defendants in the case. That case was captioned in the trial court as *Null v Auto-Owners Ins Co*, LC No. 10-228-NI. Wells Fargo and Auto-Owners continued to correspond during the pendency of that companion case.

On December 2, 2010, the trial court entered an order granting summary disposition in favor of defendant Wells Fargo. The order stated, "This is a final Judgment as to [Wells Fargo] only and does not resolve all pending matters in this case." Although it had been dismissed from the litigation, Wells Fargo moved to intervene as a counterplaintiff sometime in May 2011.

The motion stated that Wells Fargo was not asserting a new claim against Auto-Owners, that its claim was derivative of the policy held by Lonnie, and that, if intervention was granted, Wells Fargo intended to file a counterclaim against Elizabeth only. The trial court denied this motion on May 9, 2011.

After a bench trial, the trial court reversed its earlier initial grant of summary disposition in favor of Elizabeth and granted summary disposition in favor of Auto-Owners, denying coverage in an opinion dated October 5, 2011, and an order entered on October 21, 2011.

Elizabeth appealed, and this Court issued an opinion affirming the trial court's order on October 22, 2013. See *Null v Auto-Owners Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2013 (Docket No. 308473) at 1, 3. Relevant to this appeal, this Court stated that the residence did not fall within the policy's definition of covered property because

> [t]he controlling Michigan case law establishes that defendant properly denied coverage on the basis of the policy's residence requirements. In *Heniser* [*v Frankenmuth Mut Ins Co*, 449 Mich 155, 161; 534 NW2d 502 (1995)], our Supreme Court explained that when a property insurance policy includes a "residence premises" definition, there is no coverage if the insured does not reside at the property. The property at issue in *Heniser* was a vacation home that the insured had sold on a land contract, and the insured did not live in the home. *Id*. at 157. The Court held, "[w]e agree with those courts that have found the exact language of this policy to unambiguously require the insured to reside at the insured premises at the time of the loss." *Id*. at 168.
>
> This Court applied *Heniser* to confirm a denial of insurance coverage in *McGrath v Allstate Ins Co*, 290 Mich App 434; 802 NW2d 619 (2010). The *McGrath* Court determined that the residence premises requirement pre-

cluded coverage unless the insured lived in the premises at the time of the loss. *Id.* at 441. The Court rejected the argument that the insured could be deemed to reside in the premises if the insured intended to return at some time in the future. *Id.* at 442. The Court determined that the term "reside" had no technical meaning in the policy, and that the policy plainly required the insured to live in the premises in order to obtain coverage. *Id.* at 442-443.

\* \* \*

*Heniser* and *McGrath* control the coverage question in this case. There is no ambiguity in the policy language at issue; the policy limits coverage to the dwelling in which the insured resides and which is used as the insured's primary residence. The record confirms that Lonnie did *not reside in the home at the time of the fire.* Plaintiff testified in deposition that Lonnie lived at the Cassopolis house with plaintiff and her husband for approximately one month after being released from jail in 1997. After that, Lonnie "bounced around a lot," meaning he stayed sporadically at the Cassopolis house for a few days at a time, and stayed there for two weeks in approximately 2005. Nothing in the record indicates that Lonnie resided in the home after 2005. Accordingly, the home did not fall within the policy definition of covered property, and defendant properly denied coverage. [*Null*, unpub op at 1-3.]

### B. THE INSTANT CASE

While the companion case was proceeding, Wells Fargo filed a complaint against Auto-Owners and Elizabeth on June 13, 2011, asserting that it was entitled to any insurance proceeds recovered by Elizabeth. The complaint also alleged unjust enrichment and requested injunctive relief. Wells Fargo later amended the complaint and added a breach of contract claim against Auto-Owners.

On February 28, 2012, Auto-Owners moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Auto-Owners acknowledged that the policy at issue contained a mortgage clause that gave rise to a separate contract with the mortgagee, and that the clause would afford coverage to the mortgagee, even if coverage would not be afforded to the insured, in cases of fraud or arson. However, Auto-Owners asserted that the first step in interpreting an insurance policy is to determine whether coverage is afforded to any named insured by virtue of the satisfaction of all conditions precedent to coverage. Then, and only then, if coverage is afforded, the policy is reviewed to determine whether any exclusions apply.

Auto-Owners argued, on the basis of the trial court's ruling in the companion case, that the policy did not cover the residence because Lonnie did not reside there at the time of the fire. Because the residence was not a "residence premises" under the policy, it was not "covered property," and there accordingly was no coverage under the policy in the first instance. Auto-Owners contrasted this circumstance with situations such as fraud and arson, in which coverage was afforded but then negated by a policy exclusion. Therefore, because the trial court had already held (in the companion case) that the residence was not covered under the policy, there was no coverage under the policy in the first instance, and the mortgage clause accordingly did not provide coverage to Wells Fargo as the mortgagee. Additionally, Auto-Owners argued that the order entered by the trial court in the companion case precluded Wells Fargo from bringing its claims in a new case, under the doctrines of judicial estoppel and estoppel by laches, because Wells Fargo had an opportunity and an obligation to bring its claims in the previous companion case but failed to do so.

Wells Fargo filed a response on July 12, 2012. Wells Fargo asserted that it was entitled to coverage under the policy's mortgage clause. Specifically, Wells Fargo argued that the mortgage clause was a separate contract that was distinct from any contract Auto-Owners may have had with Lonnie, the insured. Therefore, the fact that the insured was precluded from coverage under the policy did not negate the separate contract between Auto-Owners and Wells Fargo, and Wells Fargo remained covered under the policy. Wells Fargo also argued that, as of December 8, 2010, Auto-Owners had not informed Wells Fargo of the status of its claim, as evidenced by a letter sent from Wells Fargo to Auto-Owners requesting information about the status of the claim on December 8, 2010. Auto-Owners did not advise Wells Fargo that its claim was denied until October 11, 2011. Therefore, Wells Fargo argued that the companion case did not bar the present case because it would have been "absurd" to require Wells Fargo to bring this action before it knew the status of its claim with Auto-Owners.

The trial court held a hearing on Auto-Owners' motion on July 16, 2012. After taking the matter under advisement, the trial court entered an order on July 19, 2012, stating that "the insurance policy at issue does not provide coverage to plaintiff Wells Fargo Bank for damages to the structure arising from the fire of April 11, 2009," and further stating that "the Order of December 2, 2010 . . . does constitute a dismissal of all claims Wells Fargo Bank may have had arising from the fire of April 11, 2009." The court therefore granted summary disposition to Auto-Owners under MCR 2.116(C)(10).[2] This appeal followed.

---

[2] The July 19, 2012 order made no mention of Elizabeth, who was also a defendant in the action. The trial court entered another order on

## II. STANDARD OF REVIEW

We review de novo the trial court's grant of summary disposition. *Dancey v Travelers Prop Cas Co of America,* 288 Mich App 1, 7; 792 NW2d 372 (2010). This Court reviews "a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co,* 480 Mich 105, 111; 746 NW2d 868 (2008), citing *Greene v A P Prod, Ltd,* 475 Mich 502, 507; 717 NW2d 855 (2006). Ultimately, summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief,* 274 Mich App 307, 317; 732 NW2d 164 (2007).

With regard to whether this case is barred by the order in the companion case, the trial court granted summary disposition to defendants under MCR 2.116(C)(10); however, the correct subrule for summary disposition based upon a prior order is (C)(7). See *Bd of Co Rd Comm'rs for Eaton Co v Schultz,* 205 Mich App 371, 373; 521 NW2d 847 (1994); MCR 2.116(C)(7) (providing that motion may be based on "prior judgment"). However, summary disposition under the incorrect subrule is not fatal, even if the moving party failed to cite the correct subrule, if the record supports review under the proper subrule. *Detroit News, Inc v Policemen & Firemen Ret Sys of Detroit,* 252 Mich App 59, 66; 651 NW2d 127 (2002) ("If summary disposition is granted under one subpart of the court rule

September 4, 2012, providing that all claims, against both Auto-Owners and Elizabeth, were dismissed with prejudice for the reasons provided in the previous order.

when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart.") (citation and quotation marks omitted). This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013).

The issue whether the policy covered the residence was not raised or decided in this case; it is therefore unpreserved. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). "Issues raised for the first time on appeal are not ordinarily subject to review." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). "This Court has repeatedly declined to consider arguments not presented at a lower level . . . . We have only deviated from that rule in the face of exceptional circumstances." *Id.* at 234 n 23. Nevertheless, this Court may consider an unpreserved issue "if the question is one of law and all the facts necessary for its resolution have been presented or where necessary for a proper determination of the case." *Providence Hosp v Nat'l Labor Union Health & Welfare Fund*, 162 Mich App 191, 194-195; 412 NW2d 690 (1987) (citations omitted).

The "proper interpretation and application of an insurance policy is a question of law that we review de novo." *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 196; 702 NW2d 106 (2005). We therefore review de novo the trial court's interpretation of the mortgage clause of the policy. *Id.* Generally, when reviewing an insurance policy dispute, an appellate court "look[s] to the language of the insurance policy and interpret[s] the terms therein in accordance with

Michigan's well-established principles of contract construction." *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007) (citation and quotation marks omitted).

> First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity. [*Id.* (citation and quotation marks omitted).]

"An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Heniser*, 449 Mich at 161. Policy language should be given its plain and ordinary meaning, and this Court must construe and apply unambiguous contract terms as written. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). "[A]n insurance contract should be viewed as a whole and read to give meaning to all its terms," and "[c]onflicts between clauses should be harmonized . . . ." *Busch v Holmes*, 256 Mich App 4, 8; 662 NW2d 64 (2003) (citation and quotation marks omitted). This Court gives meaning to all the terms contained within the policy. See *Mich Twp Participating Plan v Pavolich*, 232 Mich App 378, 383; 591 NW2d 325 (1998).

### III. ANALYSIS

#### A. THE ISSUE WHETHER THE RESIDENCE WAS COVERED UNDER THE POLICY IS BARRED FROM RELITIGATION BY THE DOCTRINE OF COLLATERAL ESTOPPEL

Wells Fargo argues that the residence was covered under the policy, and that the trial court erred by

holding to the contrary. We note that, as stated earlier, this Court could decline to address this issue as unpreserved. *Booth Newspapers*, 444 Mich at 234 n 23. The issue presented was raised and decided in the companion case, not in the instant case. Nonetheless, as this issue presents a question of law for which all facts necessary for its resolution have been presented, we address this issue, and conclude that collateral estoppel bars its relitigation.

Generally, application of collateral estoppel requires that (1) the issue was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there is mutuality of estoppel. *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004). The issue to be decided must be identical to the one decided in a prior action, and not merely similar. *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002).

> [M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue[,] that party must have been a party, or in privy to a party, in the previous action. In other words, [t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. [*Monat*, 469 Mich at 684-685 (citations and quotation marks omitted).]

"By preventing relitigation, this doctrine attempts 'to relieve parties of multiple litigation, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' " *Bithell*, 254 Mich App at 341, quoting *Dearborn Hts Sch Dist No 7 v Wayne Co MEA/NEA*, 233 Mich App 120, 124; 592 NW2d 408 (1998).

In the instant case, whether the residence was covered under the policy is an issue that has already been

actually litigated and determined by a valid and final judgment. See *Monat*, 469 Mich at 682. The trial court in the companion case entered an order stating that the residence was not covered under the Auto-Owners policy. Elizabeth appealed that order and a panel of this Court affirmed, specifically holding that the residence was not covered under the policy in question at the time of the fire with regard to Elizabeth's claim because "the policy limits coverage to the dwelling in which the insured resides and which is used as the insured's primary residence." *Null*, unpub op at 3. Therefore, this exact issue was the subject of a valid and final judgment. See MCR 7.202(6)(a)(i) (stating that a final judgment "disposes of all the claims and adjudicates the rights and liabilities of all the parties"); *Wurzer v Geraldine*, 268 Mich 286, 289; 256 NW 439 (1934) ("Final judgments are such as at once put an end to the action by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for.") (citation and quotation marks omitted). The first prong of the collateral estoppel analysis is satisfied.

Next, the same parties or privies had a full and fair opportunity to litigate the issue.

> A party is one who is directly interested in the subject matter and has a right to defend or to control the proceedings and to appeal from the judgment. A person is in privy to a party if, after the judgment, the person has an interest in the matter affected by the judgment through one of the parties, such as by inheritance, succession, or purchase. [*Husted v Auto-Owners Ins Co*, 213 Mich App 547, 556; 540 NW2d 743 (1995), aff'd 459 Mich 500 (1999)].

In *Null v Auto-Owners Ins Co*, LC No. 10-228-NI, Elizabeth was the plaintiff and Auto-Owners and Wells Fargo were defendants. In this case, Wells Fargo

is the plaintiff and Elizabeth and Auto-Owners are defendants. Thus, the cases involved the exact same parties. Wells Fargo had a full and fair opportunity in the companion case to litigate whether the residence was covered under the Auto-Owners policy. Although there is no evidence of record indicating that Wells Fargo actually filed any briefing or motions in support of coverage under the Auto-Owners policy, it had the opportunity to do so as a party to the action. Moreover, Wells Fargo was dismissed from the case on its own motion. The general rule permits relitigation only if "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action[.]" *Monat*, 469 Mich at 685 (citation, quotation marks, and emphasis omitted). Here, Wells Fargo—the party against whom preclusion applies—was a defendant in the initial action, was dismissed on its own motion, and as a named defendant could have participated in the appeal to this Court. See *Null*, unpub op at 1. Accordingly, relitigation is not permitted. *Monat*, 469 Mich at 685. The second prong of the doctrine is thus satisfied.

Finally, the mutuality prong is satisfied if the party "taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Monat*, 469 Mich at 684-685 (citation and quotation marks omitted). The party that benefitted from the earlier judgment in this case is Auto-Owners; the earlier judgment concluded that the Auto-Owners policy did not cover the residence. However, if the earlier judgment had held that the residence *was* covered under the Auto-Owners policy, Auto-Owners, as a party to the judgment, would have been bound by that adverse decision. *Id.*; *Wurzer*, 268 Mich at 289. Accordingly, Auto-Owners would have been bound by

the previous judgment, had it gone against it, and the third prong of the analysis is satisfied. *Monat*, 469 Mich at 684-685.[3]

Because we conclude that all three prongs of the collateral estoppel doctrine have been satisfied, we hold that the doctrine bars the relitigation of whether the residence was covered under the Auto-Owners policy.[4]

### B. WELLS FARGO WAS COVERED UNDER THE STANDARD MORTGAGE CLAUSE OF THE POLICY

"In general, there are two types of loss payable clauses, otherwise known as mortgage clauses, contained in insurance policies which protect lienholders." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 383; 486 NW2d 600 (1992). The effect of a loss payable clause on a mortgagee's claim depends on whether such a clause is "ordinary" or "standard." Under an ordinary loss payable clause, "the lienholder is simply an appointee to receive the insurance fund to the extent of its interest, and its right of recovery is no greater than the right of the insured." *Id.* There is "no privity of contract" between the insurer and the lienholder. *Id.* However, under a standard loss payable clause, sometimes termed a standard mortgage clause,

---

[3] We note that our Supreme Court has held that "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat*, 469 Mich at 695. However, we find the mutuality prong to be satisfied in this case, whether or not applicable.

[4] We disagree with Wells Fargo's contention that denial of coverage to Elizabeth under the policy renders the policy illusory or in violation of Michigan law. Had Lonnie resided in the home as required by the policy, the home would have been covered under the policy. The policy was thus not "so insubstantial as to impose no obligation," *Black's Law Dictionary* (9th ed), p 1332 (defining "illusory promise"), nor did it violate any statutory provisions governing the issuance of fire insurance policies, see MCL 500.2833 and *Heniser*, 449 Mich at 161.

a lienholder is not subject to the exclusions available to the insurer against the insured because an independent or separate contract of insurance exists between the lienholder and the insurer. In other words, there are two contracts of insurance within the policy—one with the lienholder and the insurer and the other with the insured and the insurer. [*Id.* at 384.]

See also *Singer v American States Ins*, 245 Mich App 370, 379; 631 NW2d 34 (2001) ("It is well settled that a policy's standard mortgage clause constitutes a separate and distinct contract between a mortgagee and an insurance company for payment on the mortgage."). In sum, under a standard mortgage clause, "the lienholder's interest in the insured's property will not be avoided by any acts, representations, or omissions of the insured." *Foremost*, 439 Mich at 389. Thus, a standard mortgage clause "effects a new and independent insurance which protects the mortgagee as stipulated, and which cannot be destroyed or impaired by the mortgagor's acts or by those of any person other than the mortgagee or someone authorized to act for him and in his behalf." *Id.* at 389-390 (citation and quotation marks omitted).

The two types of clauses are generally identifiable within an insurance policy on the basis of their language. An ordinary loss payable clause simply provides that the mortgagee will be paid as its "interest may appear," meaning that the mortgagee will only receive insurance proceeds to the extent of its interest in the insured property and will not have a right of recovery under the policy that is any greater than that of the insured. *Id.* at 383. A standard loss payable clause may contain the same language; however, it provides additional language that serves to afford coverage to the mortgagee even where it is not afforded to the insured. The result of such language is that "the lienholder's interest in the insured's property will not be avoided by

any acts, representations, or omissions of the insured."
*Id.* at 389. A standard loss payable clause thus may
contain language indicating, for example, that the
mortgagee will be covered notwithstanding "any act or
neglect by the insured" that may result in the denial of
coverage to the insured. *Id.* at 386, 388.

In the instant case, the Auto-Owners policy includes
the following mortgage clause:

**k. MORTGAGE CLAUSE**

This provision applies to only the mortgagee named in the
Declarations. It does not affect **your** [the insured's] rights
or duties under this policy.

The word mortgagee includes a trustee under a deed of
trust and a contract seller under a land contract.

Loss covered by the policy, if any, shall be payable to the
mortgagee, as their interest may appear, under all present
or future mortgages upon the property described in the
Declarations of this policy in which the mortgagee may
have an interest. If more than one mortgagee is named in
the Declarations, payment shall be made in order of
precedence of the mortgages.

If **we** [Auto-Owners] deny **your** [the insured's] claim, such
denial will not apply to a valid claim of the mortgagee,
provided the mortgagee:

(1) notifies **us** [Auto-Owners] of any change of ownership
or occupancy or substantial change in exposure which has
come to the knowledge of the mortgagee;

(2) pays any premium due under this policy that **you** [the
insured] or the mortgagor has neglected to pay; and

(3) submits to **us** [Auto-Owners], within 60 days after
receiving notice from **us** [Auto-Owners] of **your** [the
insured's] failure to do so, a proof of loss signed and sworn
by the mortgagee.

Whenever **we** [Auto-Owners] pay the mortgagee any sum
for loss under this policy and deny payment to **you** [the
insured] for such loss:

(1) to the extent of such payment, **we** [Auto-Owners] are legally subrogated to all rights of the mortgagee under the terms of the mortgage on the covered property; or

(2) at **our** [Auto-Owners'] option, **we** [Auto-Owners] may pay to the mortgagee the whole principal due, with interest accrued, and shall then receive full assignment and transfer of the mortgage and of all collateral.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**We** [Auto-Owners] may cancel or nonrenew [sic] this policy at any time as provided by its terms. **We** will notify the mortgagee at least 10 days prior to the effective date of the cancellation or nonrenewal. **We** may also cancel this agreement by providing 10 days notice to the mortgagee.

All policy terms and conditions apply to the mortgagee.

Wells Fargo maintains that this mortgage clause constitutes a standard mortgage clause that acts as a separate contract between it and Auto-Owners, and that coverage under the standard mortgage clause is not avoided by Lonnie's failure to comply with the policy's requirement that he reside in the premises. Auto-Owners does not dispute that the clause is a standard mortgage clause, and in fact concedes that it gives rise to a separate contract that protects Wells Fargo against certain actions of the insured under the policy.

We agree with the parties, and conclude that the policy in this case contains a standard mortgage clause. The clause provides that the mortgagee will be paid "as their interest may appear," like an ordinary loss payable clause, see *Foremost*, 439 Mich at 383, but it also provides that if Auto-Owners denies the insured's claim, "such denial will not apply to a valid claim of the mortgagee," provided the mortgagee complies with certain conditions. Thus, the policy provides that the mortgagee will be protected from loss even if coverage is

denied to the insured, which is consistent with the requirements for a standard mortgage clause. *Id.* at 389-390.

Wells Fargo argues that this clause provides coverage for it, as mortgagee, even though it was determined in the companion case that Elizabeth was barred from recovery. That determination was based on Lonnie's failure to reside in the premises, as a result of which the property did not meet the policy's definition of "residence premises." According to Wells Fargo, Lonnie's act or neglect did not operate to avoid coverage for Wells Fargo under the separate contract of the standard mortgage clause. Auto-Owners responds that the standard mortgage clause is not applicable in situations where the policy does not provide coverage for an insured in the first instance, rather than where coverage is afforded but then negated by an exclusion.

The trial court did not provide any rationale for its conclusion that Wells Fargo was not covered under the policy. The trial court's order only provided that it granted summary disposition under MCR 2.116(C)(10) because "the insurance policy at issue does not provide coverage to plaintiff Wells Fargo Bank for damages to the structure arising from the fire of April 11, 2009."

Our review de novo of the language of the policy leads us to conclude that the trial court erred by granting summary disposition to Auto-Owners. We thus agree with Wells Fargo, and hold that the standard mortgage clause in this case is a separate contract between Wells Fargo and Auto-Owners that, by its plain language, affords coverage to the mortgagee under the circumstances presented.

As noted, "it is well settled that a policy's standard mortgage clause constitutes a separate and distinct contract between a mortgagee and an insurance com-

pany for payment on the mortgage." *Singer*, 245 Mich App at 379. Accordingly, under a standard mortgage clause, "the lienholder's interest in the insured's property will not be avoided by any acts, representations, or omissions of the insured." *Foremost*, 439 Mich at 389. However, the standard mortgage clause in the Auto-Owners policy also provides that it only applies to a "valid claim of the mortgagee" when certain conditions are met and that "[a]ll policy terms and conditions apply to the mortgagee[.]" The Auto-Owners policy does not explain or define the phrase "valid claim of the mortgagee." Likewise, the trial court did not address the meaning of this language.

Generally, the circumstances under which Michigan courts have had occasion to consider coverage under a standard mortgage clause have been in the context of policy exclusions such as those noted on appeal by Auto-Owners, i.e., fraud, arson, or loss resulting from the negligence of the insured. See, e.g., *Ramon v Farm Bureau Ins Co*, 184 Mich App 54, 58; 457 NW2d 90 (1990) (considering a standard loss payable clause in the context of "arson and fraud"). In *Foremost Ins Co*, 439 Mich at 384-390, our Supreme Court held that the insured's intentional destruction of his motor home by arson, and the insured's acts of fraud and misrepresentation, did not preclude coverage to the mortgagee under the standard mortgage clause. In holding that the mortgagee could still recover under the policy even though the insured's acts precluded coverage to the insured, however, the Court stated:

> As we have previously noted, there are two contracts of insurance involved in this case. One covers risk and outlines exclusions for the insured and the insurer. The other operates as an independent contract for the limited purpose of preventing the loss of coverage by any act or neglect between the insurer and the insured. The prevention of

> recovery under the contract between the insured and the insurer does not prohibit the recovery by the lienholder under its separate contract of insurance with the insurer . . . . [*Id.* at 388-389.]

Thus, the Court indicated that the standard mortgage clause was an independent contract of insurance meant to prevent loss of coverage for the mortgagee for *any act or neglect* between the insured and the insurer. While the case may have involved denial of coverage to the insured pursuant to an exclusion, rather than a finding that no coverage existed, the Court did not make a distinction between acts that precluded coverage and acts that excluded coverage when setting forth the rule of law.

We also reject that distinction in the circumstances presented in this case. Our decision in that regard is supported not only by *Foremost*, but also by our Supreme Court's earlier decision in *Citizens State Bank of Clare v State Mut Rodded Fire Ins Co of Mich*, 276 Mich 62; 267 NW 785 (1936). The mortgagee in that case similarly sought coverage, notwithstanding denial of the insured's claim, after a fire loss. The denial of the insured's claim was not premised on a policy exclusion, but rather on the insurer's position that the insured lacked an insurable interest or, alternatively, had obtained the policy through fraudulent representations in the application. That is, the insurer contended, as does Auto-Owners in this case, that there was no coverage in the first instance. In describing the effect and nature of a standard mortgage clause, the Court stated:

> The effect of this clause has been the subject of much litigation, and the conclusion derived is well stated in 5 Couch, Cyclopedia Insurance Law, p 4435, § 1215b:
>
> > The so-called "standard" or "union" mortgage clause, making the mortgagee payee, and stipulating

that the insurance shall not be invalidated by the mortgagor's acts or neglect, constitutes an independent contract between said mortgagee and insurer, and in such case the subject-matter of the insurance is the mortgagee's insurable interest, and not the real estate, and the risk will not be avoided by any acts, representations, or omissions of the mortgagor or owner, *whether done or permitted prior or subsequently to, or at the time of, the issuance of the policy.*

Since the case of *Hastings* [*v Westchester Fire Ins Co*, 73 NY 141 (1878)], the courts have declared this to be a separate contract between insurer and mortgagee and not subject to most of the defenses which the insurer might have against the mortgagor. Consequently, since the clause operates as a separate and distinct contract of insurance upon the mortgagee's interest, it gives the mortgagee such an independent status as might authorize a recovery on the policy by him even though the mortgagor were precluded. [*Citizens State Bank*, 276 Mich at 67-69 (emphasis added; citations omitted).]

Thus, standard mortgage clauses operate to afford coverage to mortgagees even when coverage is denied to an insured in a context other than the application of a policy exclusion, and even when the act or neglect of the insured occurs before the issuance of the policy.

This reading is consistent with the very purpose of standard mortgage clauses. A mortgagee is in a real sense a bystander to the negotiation of an insurance policy between an insured and an insurer, and to the resulting relationship between them. Although a mortgagee facilitates an insured's property ownership and is thus essential both to the insured's ownership of property and to the insured's ability then to insure that property, the mortgagee's role in the process of obtaining insurance is essentially nonexistent. That process occurs solely between the insured and the insurer; the mortgagee is merely along for the ride. The insured

makes an application to the insurer; the insurer bears the responsibility for and assumes the risks associated with evaluating the insured's application and related representations, and the facts and circumstances attendant thereto; and it proceeds accordingly. Similarly, the mortgagee is not a party to the resulting relationship between the insured and the insurer, and possesses neither the rights nor the responsibilities that are attendant to that relationship. Unlike the insurer, the mortgagee plays no role in the application evaluation process or in any resulting relationship with the insured; consequently, in the standard mortgage clause context, the mortgagee is entitled under the law to rely on the insurer's assumption of responsibility to engage in that evaluation to its satisfaction, and to assume the risks of the resulting relationship.

The consequence of this is that the mortgagee is protected in the event that any act or neglect by the insured, either before, during, or after the application process, causes the insured to be denied coverage under the policy. It matters not whether that act or neglect by the insured falls within a policy exclusion or causes there to be no coverage under the policy in the first instance. In either event, the standard mortgage clause affords protection to the mortgagee.

In this case, it was the insured's act of ceasing to reside in the residence that negated the insured's coverage. We hold that, under the rule of law announced in *Foremost* and *Citizens State Bank*, that circumstance does not negate coverage for Wells Fargo, as mortgagee, under the standard mortgage clause of the Auto-Owners policy.

Our conclusion is further supported on these facts by the language of the Auto-Owners policy itself. Specifically, the standard mortgage clause of the policy provides that a

denial of the insured's claim "will not apply to a valid claim of the mortgagee," provided the mortgagee complies with certain conditions. One of those conditions is that the mortgagee "notifies [Auto-Owners] of any change of ownership or occupancy or substantial change in exposure which has come to the knowledge of the mortgagee[.]" The inclusion of this language in the standard mortgage clause demonstrates that a mere "change of ownership or occupancy"—such as occurred in this case—will not, in and of itself, avoid coverage to the mortgagee. Even though the consequence of that circumstance may be that no coverage exists for the insured in the first instance, the standard mortgage clause continues to afford protection to the mortgagee.

For the same reason, the use of the adjective "valid" within the phrase "valid claim of the mortgagee" is inconsequential to our analysis. The standard mortgage clause is clear that, notwithstanding the above circumstance, a mortgagee still may have a "valid claim." To read the term more broadly, so to exclude as "invalid" any claim arising in the context of a change in ownership or occupancy, would give rise to an internal inconsistency in the policy language, and effectively would undermine the policy's own standard mortgage clause. We decline to so interpret the policy language. See *Ingersoll-Rand Fin Corp v Employers Ins of Wausau*, 771 F2d 910, 914 (CA 5, 1985), quoting Couch, Insurance, 2d (rev ed), § 42:720 (1982) (" '[I]nsofar as the provisions of the policy are inconsistent with or antagonistic to the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his rights.' ") (citation and quotation marks omitted).[5] Further, to the extent that this or other

---

[5] For the same reason, we decline to read the language "[a]ll policy terms and conditions apply to the mortgagee" as meaning that the

language may be read as giving rise to an ambiguity in the policy, such ambiguities must be construed against Auto-Owners as the drafter. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62; 664 NW2d 776 (2003) ("[I]t is already well established that ambiguous language should be construed against the drafter, i.e., the insurer.").

Our conclusion draws further support from decisions in other jurisdictions. There are no Michigan cases that squarely consider whether a mortgagee continues to have a "valid claim" under a standard mortgage clause even when the property is not covered because it was not a "residence premises" at the time of the loss. However, other jurisdictions have considered the application of standard mortgage clauses in similar contexts. Caselaw from other states is not binding on this court, but may be "instructive" and used as a guide. *A&E Parking v Detroit Metro Wayne Co Airport Auth*, 271 Mich App 641, 645; 723 NW2d 223 (2006); see also *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529; 791 NW2d 724 (2010).

In *Ingersoll-Rand*, 771 F2d at 911-914, the United States Court of Appeals for the Fifth Circuit addressed a standard mortgage clause that provided no coverage for the insured. The case involved an insurance policy covering a ship that was stolen because of the insured's negligence; however, theft of the ship was not covered under the policy. *Id.* at 911. As the Fifth Circuit explained, "[b]oth parties agree that loss by theft of the vessel was not among the named perils covered by the

---

mortgagee is subject to all defenses to which the insured may be subject. Such a reading would be contrary to specific language of the policy, would serve to undermine the law's recognition of the purpose and effect of the standard mortgage clause, and would be inconsistent with and antagonistic to the clause that protects the interest of the mortgagee. *Ingersoll-Rand*, 771 F2d at 913.

policy; so that the insured mortgagor-owner . . . could not itself recover on the policy for the present loss if occasioned by a theft of the vessel." *Id.* at 912. Nevertheless, the Fifth Circuit held that the mortgagee could recover under the policy's standard mortgage clause, stating:

> Where the issue has been squarely presented, the modern decisions are unanimous, and the earlier decisions virtually so, in holding that a mortgagee under a standard mortgage clause may (where not guilty himself of any breaches of policy conditions) recover from the insurer for a loss sustained by the mortgaged property, even though the risk be excluded from the policy coverage . . . .
>
>            \*   \*   \*
>
> . . . The intent of the standard mortgage clause is that the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor and that no act or default of any person other than the mortgagee . . . shall affect the rights of the mortgagee to recover in case of loss. "[I]nsofar as the provisions of the policy are inconsistent with or antagonistic to the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his rights." [*Id.* at 913-914, quoting Couch, § 42:720 (citations and quotation marks omitted).]

Additionally, under facts closely resembling the facts of the instant case, the California Court of Appeals has held that a mortgagee was covered under a policy's standard mortgage clause. In *Home Savings of America, FSB v Cont'l Ins Co*, 87 Cal App 4th 835; 104 Cal Rptr 2d 790, 792 (Cal App, 2001), the insured homeowners vacated their residence and demolished the property with the intent to rebuild; however, they did not notify the insurer or the mortgagee of their actions. *Id.* After the loan went into default, the mortgagee learned of the vacancy and demolition and sought to recover under the

policy's standard mortgage clause. Similar to the terms of the policy in this case, the policy contained a "residence premises" definition and a standard mortgage clause providing that a denial of the insured's claim would not apply to a "valid claim of the mortgagee, if the mortgagee . . . notifies [the insurer] of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware[.]" *Id.* at 792, 796. The California court cited with approval *Foremost*, 439 Mich at 383-384, for its description of the nature and effect of standard mortgage clauses. The court concluded that, even though the insured did not reside in the home, and had actually demolished the home when the mortgagee filed its claim, the mortgagee remained covered under the policy's standard mortgage clause. More specifically, the court held that "[e]ven though ownership and occupancy are requirements of coverage as far as the named insured is concerned . . . , a change in ownership and occupancy will not defeat coverage for the mortgagee, provided the mortgagee gives notice of the changes of which it is aware." *Id.* at 796.

In *Waterstone Bank, SSB v American Family Mut Ins Co*, 2013 Wis App 60, 348 Wis 2d 213, 221-222; 832 NW2d 152 (2013), however, the Wisconsin Court of Appeals upheld the insurance company defendant's denial of coverage to the plaintiff mortgagee, because the business-owner's policy did not cover certain losses if the property was "vacant" (defined as less than 31% of the total space rented or used) for a specified period of time prior to the occurrence of the losses. Importantly, the court noted that vacancy was not prohibited by the policy; in fact the policy specifically contemplated that a building may become vacant, in which case certain losses would not be covered; thus, the vacancy clause was "not a term or condition, the violation of which by the property owner's act would forfeit or void the policy." *Id.* at ¶ 11.

We find *Ingersoll-Rand* and *Home Savings* to be persuasive and to support our conclusion that the rule of *Foremost* provides for coverage for Wells Fargo in the instant case. We find *Waterstone Bank* to be distinguishable, because it involved a business-owner's policy under which "noncoverage existed by virtue of the vacancy provision and not by any breach or violation by the property owner," *Waterstone Bank*, 2013 Wis App at ¶ 10, rather than, as here, a homeowner's policy under which the insured was denied coverage because the insured had failed to abide by the residency requirement of the policy ("Thisdwelling [sic] must be used principally as **your** private residence."). Thus, unlike this case, *Waterstone Bank* did not involve the sort of act or neglect on the part of the insured from which the standard mortgage clause was designed to protect the mortgagee.

For all these reasons, we conclude that the trial court erred by granting summary disposition to Auto-Owners with respect to Wells Fargo's coverage under the standard mortgage clause of the policy. Further, for the reasons indicated, we hold that the standard mortgage clause of the policy unambiguously provides coverage for Wells Fargo in the circumstances presented. For the reasons discussed later in this opinion, however, we conclude, on the basis of the record that is now before us, that it would be premature to direct the entry of summary disposition in favor of Wells Fargo.

C. THE ORDER GRANTING SUMMARY DISPOSITION TO
WELLS FARGO IN THE COMPANION CASE DOES NOT BAR
WELLS FARGO'S CLAIM IN THIS CASE

Finally, Wells Fargo argues that the trial court's order granting summary disposition to Wells Fargo in the companion case does not bar its claim in this case. Auto-Owners responds that the doctrines of judicial

estoppel and estoppel by laches apply to bar Wells Fargo's claim because Wells Fargo was aware of the claim and had an opportunity to bring the claim during the companion case. The trial court did not provide any rationale or reasoning for its conclusion that the companion case barred Wells Fargo's claim in this case. The trial court only stated that its previous order "does constitute a dismissal of all claims Wells Fargo Bank may have had arising from the fire of April 11, 2009." We agree with Wells Fargo that the companion case does not bar its claim in the instant case.

"Judicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation. The doctrine protects the integrity of the judicial and administrative processes." *Ford Motor Co v Pub Serv Comm*, 221 Mich App 370, 382-383; 562 NW2d 224 (1997). This Court has held that "[u]nder the doctrine of judicial estoppel, a party that has unequivocally and successfully set forth a position in a prior proceeding is estopped from setting forth an inconsistent position in a later proceeding." *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 672; 760 NW2d 565 (2008). For the doctrine to apply, the party's position in the prior proceeding must have been " 'wholly inconsistent' " with the same party's position in the later proceeding. *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012), quoting *Paschke v Retool Indus*, 445 Mich 502, 510; 519 NW2d 441 (1994). The doctrine was developed to prevent parties from playing " 'fast and loose' with the legal system." *Paschke*, 445 Mich at 509 (citation omitted).

"Estoppel by laches is the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time." *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 583; 458

NW2d 659 (1990), citing *Bartnicki v Wayne Co Drain Comm'r*, 18 Mich App 200, 205; 170 NW2d 856 (1969). "To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay." *Id.*, citing *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982).

We conclude that neither of these doctrines is applicable to the circumstances of the instant case. With regard to judicial estoppel, there is no record evidence that Wells Fargo "unequivocally and successfully set forth a position in a prior proceeding" and is now attempting to present "an inconsistent position" in this proceeding. *Detroit Int'l Bridge Co*, 279 Mich App at 672. The companion case concerned whether Elizabeth was entitled to benefits under the Auto-Owners policy. This case concerns whether Wells Fargo is covered under the standard mortgage clause of the Auto-Owners policy. There is no evidence of record that Wells Fargo argued in the companion case that it was not entitled to coverage under the standard mortgage clause of the policy. In fact, even after Wells Fargo was dismissed from the companion case, it moved to intervene as a counterplaintiff, seeking to assert that it was entitled to its share of the proceeds that Auto-Owners owed Elizabeth. This position is congruent with the one Wells Fargo takes in this case, by arguing both that coverage was afforded to the insured under the policy, and that coverage was separately afforded to it under the standard mortgage clause of the policy. Wells Fargo's position thus is not " 'wholly inconsistent' " with its position in the companion case, and the doctrine of judicial estoppel does not apply. *Szyszlo*, 296 Mich App at 51, quoting *Paschke*, 445 Mich at 510.

Further, even though it may have been more efficient for Wells Fargo to have asserted its claim against Auto-Owners in the companion case, "[t]o successfully

assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay." *Schmude Oil*, 184 Mich App at 583. There is no evidence of record that Auto-Owners was prejudiced by virtue of the disposition of Elizabeth's claim and Wells Fargo's claim in two different lawsuits. Wells Fargo acted promptly to protect its interest upon the denial of its claim in late 2011. In fact, the present case was filed while the companion case was still pending in the trial court. Regardless of these circumstances and judicial efficiency, however, the record does not support the conclusion that Auto-Owners was prejudiced by the resolution of these claims in separate actions. Accordingly the doctrine of estoppel by laches does not apply.

### IV. REMAND IS NECESSARY FOR DETERMINATION OF WHETHER WELLS FARGO COMPLIED WITH THE REQUIREMENTS OF THE POLICY

In its motion for summary disposition before the trial court, Auto-Owners alternatively argued that, even if coverage was afforded to Wells Fargo under the mortgage clause, Wells Fargo had failed to comply with the requirement that it "submit[] to us [Auto-Owners], within 60 days after receiving notice from us [Auto-Owners] of your [the insured's] failure to do so, a proof of loss signed and sworn by the mortgagee." Auto-Owners alleged that it informed Wells Fargo in correspondence dated August 17, 2009, that it was required to submit a sworn proof of loss within 60 days, and that Wells Fargo failed to do so. Thus, it argued, Auto-Owners properly denied Wells Fargo's claim.

Wells Fargo responded that a genuine issue of material fact existed regarding whether it had "received" the requisite notice from Auto-Owners, so as to trigger its obligation to provide a sworn proof of loss within 60 days. Wells Fargo further argued that deposition testi-

mony from an Auto-Owners claims representative supported the notion that it had made a valid claim under the policy, and that in any event correspondence from Auto-Owners on April 21, 2009, contained the representation that Auto-Owners had received a claim from the insured and that Wells Fargo needed to take no further action to secure its rights under the policy.

The parties addressed this issue at a hearing before the trial court and presented arguments consistent with the positions taken in their respective briefs. However, the trial court made no specific ruling on this issue in its order granting summary disposition to Auto-Owners. Because the trial court concluded that the policy did not provide coverage to Wells Fargo, and further that its order in the companion case barred Wells Fargo's claim, it apparently saw no need to address the issue of Wells Fargo's compliance with policy provisions.

Because we conclude that the trial court erred by ruling that the policy did not provide coverage to Wells Fargo and that the companion case barred Wells Fargo's claim, we conclude that the proper course of action is to remand to allow the trial court to decide whether a genuine issue of material fact exists concerning Wells Fargo's compliance with the requirements of the policy. This comports with the principle that "[a]ppellate review is generally limited to issues decided by the trial court." *Candelaria v B C Gen Contractors, Inc*, 236 Mich App 67, 83; 600 NW2d 348 (1999). This is especially true where, as here, the issue has not been briefed on appeal, and it would be inappropriate to request supplemental briefing on the issue in the absence of a ruling from the trial court. *Id*. Consequently, and notwithstanding our holding that the standard mortgage clause of the policy unambiguously provides coverage for Wells Fargo in the circumstances presented, the trial

court, on remand, should determine whether there is any genuine issue of material fact as to whether Wells Fargo complied with the requirements of the policy.

## V. CONCLUSION

We conclude that the doctrine of collateral estoppel bars relitigation of whether the residence was covered under the policy. We further conclude that the trial court erred by granting summary disposition to Auto-Owners on the issue of Wells Fargo's coverage under the policy. We hold as a matter of law that the policy's standard mortgage clause afforded coverage to Wells Fargo, the mortgagee, despite the lack of coverage for the insured. Additionally, we conclude that the doctrines of judicial estoppel and estoppel by laches do not bar Wells Fargo's claim in the instant case. We further conclude, however, that it would be inappropriate at this juncture to determine as a matter of law whether Wells Fargo complied with the requirements of the policy, without consideration of that issue by the trial court.

We therefore reverse the trial court's grant of summary disposition in favor of Auto-Owners and remand this case for further proceedings consistent with this opinion. On remand, the trial court should determine whether, in light of our decision that the policy provides for coverage for Wells Fargo and Wells Fargo's claims are not barred by the companion case, a genuine issue of material fact exists regarding Wells Fargo's compliance with the requirements of the policy.

Reversed and remanded. We do not retain jurisdiction.

CAVANAGH and FITZGERALD, JJ., concurred with BOONSTRA, P.J.