# STATE OF MICHIGAN

# COURT OF APPEALS

ELAINE VILLANUEVA,

        Plaintiff-Appellee,

v

CHERRY BELT PARTY STORE,

        Defendant-Appellant.

UNPUBLISHED
October 14, 2014

No. 317044
Wayne Circuit Court
LC No. 12-011507-NO

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

In this premises liability action, Cherry Belt Party Store appeals by leave granted the trial court's order denying its motion for summary disposition.[1] We reverse and remand for entry of an order granting summary disposition to Cherry Belt.

On the afternoon of July 12, 2012, Elaine Villanueva, 82 years old at the time, drove her granddaughter, Crystal Keatts, and another woman to Cherry Belt. Villanueva had been a customer at the store for more than 20 years. Villanueva estimated that during the last 10 years, she had shopped at the store at least three to four times a week. The day was sunny and Villanueva was wearing rubber-soled gym shoes. Villanueva pulled into one of the parking spots directly in front of the store. Individual cement parking blocks are in front of each parking space. While Villanueva remained in the car, Keatts exited the vehicle and walked into the store.

At some point, Villanueva decided that she wanted Keatts to check the numbers on some lottery tickets. In an effort to "catch" Keatts, Villanueva exited her vehicle and took approximately three steps. She was looking straight ahead at the time. Villanueva stepped between the two parking blocks. She then tripped and fell at the point where the blacktop parking lot met the sidewalk. Villanueva testified that there was a "hole," which caused her to catch on the sidewalk. Villanueva admitted that the sidewalk was readily observable, but she did not see it because she was not looking. She also admitted that the alleged defect was readily observable. According to Keatts, however, vehicles were parked near the alleged hole or

---

[1] *Villanueva v Cherry Belt Party Store*, unpublished order of the Court of Appeals, entered January 10, 2014 (Docket No. 317044).

depression "virtually obstructing it from view," and "[t]he depression or hole was not easily visible to anyone." Barbara Wood, an employee of Cherry Belt, testified that she was unaware of any defect and would not expect customers to be aware of any defect.[2] Photographic evidence depicts a sidewalk slightly higher than the asphalt surface of the lot, and the condition of the asphalt as deteriorated and irregular.

Cherry Belt contends that the trial court erred in denying its motion for summary disposition because the condition was open and obvious as a matter of law. We agree.

The denial of a motion for summary disposition is reviewed de novo.[3] In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[4] "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ."[5]

It is undisputed that Villanueva was on Cherry Belt's property as a business invitee. "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."[6] "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers."[7] "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection."[8] Because this is an objective standard, the relevant "inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous."[9]

Applying the foregoing principles to the facts in this case, we conclude that the trial court erred when it denied Cherry Belt's motion for summary disposition. Although Villanueva claims that the defect could not be discerned because the defect was the same color as the rest of the pavement and was located in an area where customers park their vehicles close to each other, the

---

[2] Although Villanueva admits that Wood's deposition is not part of the lower court record, we exercise our discretion in considering this addition to the record. MCR 7.216(A)(4).

[3] *Douglas v Allstate Ins Co*, 492 Mich 241, 256; 821 NW2d 472 (2012).

[4] *Id.* (citation and quotation marks omitted).

[5] *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 517; 847 NW2d 657 (2014) (citation and quotation marks omitted).

[6] *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).

[7] *Id*. at 517.

[8] *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012).

[9] *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008).

photographs of the area clearly depict the uneven transition from the blacktop to the sidewalk. The color differential between the sidewalk and the pavement enhances the ability to discern the uneven surfaces. Moreover, painted yellow lines lead up to the alleged defect and, on either side of the "defect," are two parking blocks painted white. Villanueva herself admitted that the condition was visible. Villanueva further admitted that she was not looking at the parking lot surface, but that her focus was directed toward catching Keatts. We find that an average person with ordinary intelligence would have discovered the danger upon casual inspection because had Villanueva been looking down, she would have seen the condition of the pavement and the obvious height differential between the pavement and the sidewalk.[10]

Neither the affidavit of Keatts, nor the deposition testimony of Wood creates a genuine issue of material fact. Although Wood testified that she was not aware of any defect and would not expect customers to be aware of any defect, the question is not whether a particular person was aware of the defect, but whether a reasonable person in Villanueva's position would have observed the danger.[11] Similarly, while Keatts averred that "[t]he depression or hole was not easily visible to anyone," and "[m]otor vehicles were parked near the hole or depression virtually obstructing it from view," she did not indicate from which vantage point she was referring. Again, the question is whether a reasonable person in Villanueva's position would have observed the danger.[12] The evidence establishes that a reasonable person in Villanueva's position would have so observed. Moreover, the fact that motor vehicles were parked near the defect does not preclude application of the open and obvious doctrine. Thus, viewing the evidence in the light most favorable to Villanueva, we conclude that the condition of the premises was open and obvious as a matter of law.[13]

Further, there are no special aspects of the alleged defect on the property that would nevertheless allow Villanueva to pursue her claim. Even where a condition is open and obvious, liability may still be imposed on the premises possessor if there were special aspects present that created an unreasonable risk of harm despite the condition being open and obvious.[14] The inquiry in such cases is "whether the 'special aspect' of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability."[15] "[O]nly those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine."[16] Put another way, the danger must be unreasonably

---

[10] See *Hoffner*, 492 Mich at 461.

[11] *Slaughter*, 281 Mich App at 479.

[12] *Id*.

[13] See *Douglas*, 492 Mich at 256.

[14] *Lugo*, 464 Mich at 517.

[15] *Id*. at 517-518.

[16] *Id*. at 519.

dangerous or effectively unavoidable.[17]  In *Lugo,* the Supreme Court provided an example of a standing pool of water in front of the only exit to a premises as a condition that is effectively unavoidable, and an example of a 30-foot deep, unguarded pit in the center of a parking lot as a condition that is unreasonably dangerous because it presents a substantial risk of death or severe injury.[18]

No genuine issue of material fact exists regarding whether the area where Villanueva tripped was unavoidable or unreasonably dangerous.  Villanueva tripped in a parking lot in front of a store.  There were multiple routes available.  Rather than pursue the route taken, Villanueva could have easily walked around the back of her vehicle.  Alternatively, she could have avoided the alleged defect by stepping over it.  Similarly, the condition of the premises was not uniquely or unreasonably dangerous.  The risk of injury presented by the height discrepancy between the pavement and the sidewalk is not even remotely similar to the 30-foot pit example discussed by our Supreme Court in *Lugo*.  Moreover, the presence of parked cars near the alleged defect is not unusual and does not render the condition unreasonably dangerous.  Thus, Villanueva has failed to demonstrate any special aspect that would render inapplicable the open and obvious doctrine.

Reversed and remanded for entry of an order granting Cherry Belt summary disposition.  We do not retain jurisdiction.  As the prevailing party, Cherry Belt may tax costs under MCR 7.219.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering

---

[17] *Hoffner*, 492 Mich at 463.

[18] *Lugo*, 464 Mich at 518.