# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

MEEMIC INSURANCE COMPANY v JONES

Docket No. 161865. Argued on application for leave to appeal November 10, 2021. Decided June 14, 2022.

Meemic Insurance Company filed a subrogation claim in the Wayne Circuit Court against Angela Jones, seeking to recover from Jones money it had paid to CitiMortgage, Inc., the mortgagee of a residential house owned by Jones and insured by Meemic, after fire damaged the property. In 2014, Meemic had issued a homeowner's policy to Jones; later, the parties renewed the insurance policy for an additional year. The policy contained express terms equating to a standard mortgage clause, which created two contracts of insurance within the single policy—the risk contract (between Jones and Meemic) and the lienholder contract (between CitiMortgage, the lienholder identified by the mortgage clause, and Meemic). The policy provided that the interests of the mortgagee (here, CitiMortgage) would not be affected by any actions by Jones, the mortgagor. The policy additionally provided that if Meemic paid the mortgagee for any loss and denied payment to Jones, Meemic could either (1) subrogate itself to all the rights of the mortgagee under the mortgage on the property or (2) pay the mortgagee the mortgage balance and receive a full assignment and transfer of the mortgage. In September 2015, Jones was living at the house when it was damaged by a fire. In response to the claim filed by Jones, Meemic paid her $2,500 in partial payment of the claim for insurance benefits. During Meemic's ensuing investigation, Jones admitted that at the time she secured the policy in 2014, she did not reside at the house but, instead, rented it to a third party. Meemic claimed that Jones's failure to disclose in the initial policy that her home was being rented to others constituted a material misrepresentation. On the basis of the misrepresentation, Meemic rescinded and voided the insurance policy from its inception and returned Jones's policy payments. After rescinding the policy, Meemic paid $53,356.49 to CitiMortgage under the lienholder contract of the policy. Jones filed an action against Meemic, claiming breach of contract and seeking to recover under the insurance policy. Meemic moved for summary disposition, arguing that it had properly rescinded the policy given Jones's misrepresentation in the initial policy. The court, John H. Gillis, Jr., J., denied the motion, reasoning that there was no fraud because her answers in the policy's renewal application—that she was residing at the property—were correct at the time Jones renewed the policy. Meemic filed an application for leave to appeal in the Court of Appeals. In an unpublished order entered April 19, 2017 (Docket No. 337041), the Court of Appeals summarily reversed the trial court's order denying Meemic's motion for summary disposition and remanded to the trial court. The Supreme Court denied Jones's application for leave to appeal. 501 Mich 951 (2018). On remand

from the Court of Appeals, the trial court reversed its earlier order denying Meemic's motion for summary disposition, granted Meemic's motion for summary disposition, and dismissed Jones's complaint with prejudice. In 2018, Meemic filed the instant action against Jones, seeking to recover the $2,500 advance payment made to Jones and the $53,356.49 it had paid to CitiMortgage under the lienholder contract. Jones moved for summary disposition, arguing that she was relieved from any obligations under the insurance policy because Meemic had rescinded the insurance policy; Meemic opposed the motion and filed a countermotion for summary disposition. The court granted Meemic's countermotion for summary disposition and denied Jones's motion for summary disposition; the court later denied Jones's motion for reconsideration. In an unpublished per curiam opinion issued May 21, 2020 (Docket No. 346361), the Court of Appeals, MURRAY, C.J., and SWARTZLE and CAMERON, JJ., reversed the trial court's order and remanded for proceedings consistent with its opinion. The Court reasoned that while Meemic's rescission of Jones's policy did not affect the lienholder contract between Meemic and CitiMortgage, the contract only granted Meemic the right of subrogation if it paid CitiMortgage and refused to pay Jones's claim under the policy. Because Meemic took the extra step of annulling Jones's rights under the policy by declaring it void *ab initio*, Meemic was not entitled to subrogation against Jones. The Court later denied Meemic's motion for reconsideration. Meemic filed an application for leave to appeal in the Supreme Court. The Supreme Court ordered and heard oral argument on whether to grant Meemic's application for leave to appeal or take other action. 507 Mich 854 (2021).

In an opinion by Justice ZAHRA, joined by Chief Justice MCCORMACK and Justices VIVIANO, BERNSTEIN, and CLEMENT, the Supreme Court *held*:

When an insurance policy contains a mortgage clause that equates to a standard mortgage clause—which contains both a risk contract and a lienholder contract within the same policy—a misrepresentation in the mortgagor's insurance application does not void the lienholder contract between the insurer and the mortgagee even when the misrepresentation renders the policy void *ab initio* as to the mortgagor; the intent of the parties, as discerned from the terms of the contract, controls whether portions of the rescinded contract are enforceable . Thus, an insurer who rescinds a homeowner's insurance policy that contains a mortgage clause may seek subrogation from the insured under its rescinded policy for the amount paid to the mortgagee under the lienholder contract. The Court of Appeals judgment was reversed because it erred by concluding that Meemic's rescission of the risk contract precluded it from denying payment to Jones and then asserting rights under the subrogation provision of the lienholder contract.

1. Insurance policies are contracts. A standard mortgage clause in a homeowner's insurance policy creates two contracts within the single policy: one contract is between the insured and insurer (the risk contract), and the second contract is between the lienholder identified by the mortgage clause and the insurer (the lienholder contract). A standard mortgage clause protects the mortgagee as stipulated in the policy and cannot be destroyed or impaired by the mortgagor's acts or by those of any person other than the mortgagee or someone authorized to act for the mortgagee. Thus, when an insurance policy contains a standard mortgage clause, a misrepresentation in the mortgagor's application for insurance does not void the contract between the insurer and the mortgagee even when the misrepresentation renders the policy void *ab initio* as to the mortgagor. To determine whether portions of a rescinded contract are enforceable, a court must review the terms of the rescinded contract to determine the intent of the parties; if it is clear from the language of the contract that the parties intended a portion of the contract to remain enforceable

notwithstanding rescission, the court must enforce that intent. If the parties intended that result, when an insurance policy contains a mortgage clause that equates to a standard mortgage clause, a misrepresentation in the mortgagor's application for insurance does not void the lienholder contract between the insurer and the mortgagee even when the misrepresentation renders the policy void *ab initio* as to the mortgagor.

2. The policy in this case provided (1) that the interest of the mortgagee would not be affected by any action or neglect by Jones and (2) that if Meemic paid the mortgagee (CitiMortgage) for any loss and denied payment to Jones, Meemic could either be subrogated to all of the mortgagee's rights under the mortgage or pay the mortgagee the principal on the mortgage and receive a full assignment and transfer of the mortgage. The policy's denial-of-payment language under the subrogation provision was independent from the validity of the risk contract. The subrogation provision only became relevant after Meemic paid CitiMortgage, and when that occurred, the issue was whether Meemic denied payment to Jones under the insurance policy. The language did not require an additional assessment of the reasons underlying Meemic's denial of payment. Because Meemic paid CitiMortgage under the terms of the risk contract and denied payment to Jones, the subrogation clause was enforceable. The subrogation provision applied to the lienholder contract and it was not rescinded by Meemic's rescission of the insurance policy. While Jones may or may not have been a party to the lienholder contract, she paid the consideration for both the risk and lienholder contracts, agreed to the policy's subrogation provision, and stood to benefit from Meemic's payment to CitiMortgage. As a result, Jones could not challenge Meemic's reliance on the subrogation provision. While the Court of Appeals correctly recognized that the language in the policy equated to a standard mortgage clause and that Jones's action or neglect with regard to the application did not prevent CitiMortgage from recovering under the policy as the mortgagee and Meemic, in turn, as the subrogee of CitiMortgage, the Court erred by concluding that the subrogation clause did not survive Meemic's rescission of the policy by declaring it void *ab initio* and by holding that Jones was not obligated to pay Meemic under the terms of the policy the amount of money Meemic had paid to CitiMortgage under the lienholder contract.

Court of Appeals judgment reversed; final judgment of the trial court reinstated.

Justice WELCH, joined by Justice CAVANAGH, dissenting, agreed with the majority that Meemic remained contractually obligated under the lienholder contract to pay CitiMortgage for the loss even though it had rescinded the policy, that Meemic was entitled to seek reimbursement under the standard mortgage clause, and that the Court of Appeals erred by holding otherwise. She wrote separately because the majority opinion failed to address whether the trial court erred by granting summary disposition and awarding damages to Meemic before first deciding CitiMortgage's right to recover against Jones, which would then determine Meemic's rights as subrogee of CitiMortgage to recover against Jones. The purpose of a standard mortgage clause is to protect the mortgagee from loss even if the insured is denied coverage; it allocates the risk to the insurer because the insurer is better positioned than the mortgagee to evaluate the insured's underwriting risk. Under the lienholder contract, Meemic could have pursued its rights by either (1) subrogating itself to CitiMortgage's rights under the mortgage or (2) paying the remaining principal on the mortgage debt and obtaining a full assignment and transfer of the mortgage and related securities. Because Meemic failed to obtain an assignment of the mortgage from CitiMortgage, Meemic was only able to recover from Jones as subrogee of CitiMortgage. In its

complaint and motion for summary disposition, Meemic never detailed the scope of CitiMortgage's rights as the mortgagee, and because of that, Meemic failed to set forth the scope of Meemic's rights as subrogee, a necessary element of a claim for subrogation under a contract. Relevant here, Meemic's mere assertion that it was contractually entitled to recover directly from Jones the amount it had paid to CitiMortgage because it was subrogated to CitiMortgage's rights did not provide a sufficient legal basis for Meemic to immediately obtain a judgment in that amount. Thus, Meemic failed to carry its burden as the plaintiff and summary-disposition movant to establish that CitiMortgage's rights would provide Meemic through subrogation a basis for the relief requested. Accordingly, Meemic should not have prevailed on summary disposition. Justice WELCH would have held that the Court of Appeals correctly reversed the trial court's order granting summary disposition to Meemic but for the wrong reason.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 14, 2022

S T A T E   O F   M I C H I G A N

SUPREME COURT

MEEMIC INSURANCE COMPANY,

      Plaintiff-Appellant,

v                                         No. 161865

ANGELA JONES,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Defendant, Angela Jones, procured from plaintiff, Meemic Insurance Company, a homeowner's insurance policy that contained a mortgage clause protecting the interests of her mortgagee, CitiMortgage. Fire damaged the insured property, and Jones asserted a claim under the policy. Meemic, however, rescinded the policy and declared it void *ab initio*[1] after

---

[1] There is little, if any, daylight between a rescinded policy and one deemed void *ab initio*. "Void *ab initio*" means "[n]ull from the beginning, as from the first moment when a contract is entered into," *Black's Law Dictionary* (11th ed), and this Court, in *Titan Ins Co*

Jones admitted to making a material misrepresentation in the original policy application. Meemic paid the balance of the mortgage lien to CitiMortgage under the terms of the policy's mortgage clause, and it later filed a subrogation claim against Jones. Jones defended the suit, claiming that the policy under which Meemic asserts subrogation was rescinded and deemed void *ab initio*. Therefore, Jones contended, she is not accountable for the funds Meemic paid to her mortgagee. The question presented is whether an insurer who rescinds a homeowner's policy of insurance that contains a mortgage clause may nonetheless seek subrogation under its rescinded policy for the amount paid to a mortgagee under the mortgage clause.

We hold that an insurer can pursue subrogation under this type of insurance policy. We read each insurance policy under the specific terms of that policy and rely on our settled caselaw to confirm the meaning and intended operation of those terms. In this case, we are presented with a typical homeowner's insurance policy that contains express terms equating

---

*v Hyten*, 491 Mich 547, 567-568; 817 NW2d 562 (2012), has approvingly cited the following outline of the nature of rescission:

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo*. [*Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995) (quotation marks and citation omitted).]

Despite marginal differences, if any, between the two concepts, we use the term "rescind" to indicate that the policy at issue was both rescinded and voided *ab initio*.

2

to a "standard mortgage clause."[2]   This is a clause intended to create two contracts of insurance within a single "insurance policy."   One contract is between the insured and the insurer (the risk contract), and the second contract is between the lienholder identified by the mortgage clause and the insurer (the lienholder contract).[3]   We reaffirm our caselaw holding that when an insurance policy contains a mortgage clause that equates to a standard mortgage clause, a misrepresentation in the mortgagor's application for insurance does not void the

---

[2] At one time, homeowner's policies contained a clause known as an "ordinary mortgage clause."   Under the ordinary mortgage clause, the interests of lienholders were not adequately protected.   *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 383-384; 486 NW2d 600 (1992).   This resulted in an evolution to the standard mortgage clause.   *Id*. While there appear to be minor deviations between a classic standard mortgage clause and the mortgage clause at issue in this case, the litigants generally agree that the mortgage clause at issue is a standard mortgage clause.   In its supplemental brief, Meemic refers throughout to the instant provision as a standard mortgage clause.   And Jones's supplemental brief in this Court states, "Even though the *standard mortgage provision* created a separate contract between Meemic and CitiMortgage, the subrogation provision was directed solely at the named insured, Ms. Jones[.]" (Emphasis added.)

[3] Typically, the lienholder or any of its subrogees will bring an action against the insurer that refuses to pay under the lienholder contract.   See *Foremost Ins Co*, 439 Mich at 382-383.   In *Foremost*, for example, a bank was the lienholder and its subrogee was its insurer, which brought suit.   *Id*. at 381-383.   But there may be other parties holding an interest in the property that can also bring suit under the lienholder contract.   Although not raised by the parties, we highlight that the language of the instant mortgage clause does provide Jones a right to enforce the lienholder contract as a third-party beneficiary.   See MCL 600.1405. Specifically, the language provides that "[i]f a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee and **you**, as interests appear."   This provision would provide a right to payment if, for instance, the lienholder's interest in the property is less than the amount of the loss.   Although this circumstance does not appear to be present in this case, we believe it worth noting to repudiate the assertion by Jones that she is a stranger to the lienholder contract.

lienholder contract between the insurer and mortgagee even when the misrepresentation renders the policy void *ab initio* as to the mortgagor.[4]

Given this affirmation, the only remaining question is whether the subrogation provision in the insurance policy at issue in this case remains enforceable against the insured. We hold that it is. The Court of Appeals erred by concluding that Meemic's rescission of the risk contract precluded it from denying payment to Jones and from asserting rights and privileges under the subrogation provision. Jones provided the consideration for both the risk and lienholder contracts, agreed to the subrogation provision within the insurance policy, and only stood to benefit from Meemic's payment of the mortgage principal to CitiMortgage. Accordingly, we reverse the Court of Appeals' decision and reinstate the Wayne Circuit Court's final judgment.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Jones owned residential property at 4244 Lakepointe Street in Detroit, Michigan. She applied to purchase a homeowner's insurance policy from Meemic. The application provided, "I understand that Meemic may declare this policy null and void, not only as to the applicant(s), but as to any insureds, claimants, or anyone with an interest in the insured property, if any answers or any information on this application are false, misleading, or materially affect the risk that Meemic assumes by issuing the policy." Meemic issued Jones an insurance policy that was effective from July 28, 2014 through July 28, 2015. The parties later renewed the insurance policy for an additional year.

_____

[4] See *Foremost*, 439 Mich at 383-385; *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 529-530; 847 NW2d 657 (2014). See also 4 Couch, Insurance, 3d (rev ed), § 65:65, pp 115-117.

Fire damaged the property on September 28, 2015. At the time of the fire, Jones resided in the home. On September 28, 2015, Meemic provided Jones an advance payment of $2,500 in partial payment of the claim for insurance benefits. The advance-payment receipt and reservation-of-rights document, which was signed by Jones, stated, "I further understand that if the policy or the claim is not valid and additional payment is not required by [Meemic], I will repay this partial payment to [Meemic]."

During Meemic's investigation following the fire, Jones gave a recorded statement to Meemic in which she admitted that she did not reside at 4244 Lakepointe Street when she submitted her application and that, instead, she rented 4244 Lakepointe Street to Gwendolyn Sommers. Meemic alleged Jones made a misrepresentation in her application for insurance by not listing 4244 Lakepointe Street as a "Private Structure[] Rented to Others" or as an "Additional Residence[] rented to Others." After discovering this misrepresentation, Meemic sent a letter on February 19, 2016, to Jones rescinding and voiding the insurance policy from its inception because of the material misrepresentation.

The insurance policy provided, in relevant part, the following clauses:

> Rights and Duties of Mortgagee. The term "mortgagee" includes a trustee or a land contract holder, if applicable.
>
> If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee and **you**, as interests appear. . . .[5]
>
> The interest of the mortgagee under this policy will not be affected by any action or neglect by **you**. The interest of the mortgagee under this policy will terminate unless it notifies **us** of any change of ownership, occupancy or

---

[5] The mortgagee on the policy declaration was listed as CitiMortgage, Inc.

substantial change in risk of which the mortgagee has knowledge and pays upon demand any premium due if **you** fail to do so.

A second related clause provides:

If **we** pay the mortgagee for any loss and deny payment to **you**:

A. **we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property; or

B. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.

After rescinding the policy, Meemic paid $53,356.49 to Jones's mortgagee, CitiMortgage, under the lienholder contract.

On March 4, 2016, Jones filed suit against Meemic, alleging breach of contract and seeking to recover under the insurance policy. Meemic answered the complaint and later moved for summary disposition, arguing that the insurance policy was appropriately rescinded because of the misrepresentation made by Jones in the application. Jones opposed the motion. On December 28, 2016, the trial court entered an order denying Meemic's motion for summary disposition, reasoning, "[T]here was no fraud because [Jones] renewed the policy and the answers were correct at the time of the renewal and [Jones] was a resident [of the home] at the time of the fire."

Meemic applied for leave to appeal the trial court's decision concerning its motion for summary disposition. On April 19, 2017, the Court of Appeals summarily reversed the trial court's December 28, 2016 order denying Meemic's motion for summary disposition

6

and remanded the matter to the trial court.[6] This Court denied an application for leave to appeal filed by Jones.[7] On remand, the trial court entered an order (1) reversing its December 28, 2016 order denying Meemic's motion for summary disposition, (2) granting Meemic's motion for summary disposition, and (3) dismissing Jones's complaint with prejudice.

On May 15, 2018, Meemic filed suit against Jones, seeking recovery of the $2,500 advance payment and the $53,356.49 paid to CitiMortgage. Under Count I, Meemic alleged that it was entitled to recovery of the $2,500 because the insurance policy was void *ab initio*. Under Count II, Meemic alleged that it was entitled to subrogation for the $53,356.49 it paid to CitiMortgage because it properly denied coverage to Jones and rescinded the policy on the basis of the misrepresentation made in the insurance policy application. On June 22, 2018, Jones moved for summary disposition under MCR 2.116(C)(8) and (10). She argued that Meemic's rescission of the insurance policy relieved Jones of any obligation relating to

---

[6] Specifically, the panel stated:

> Pursuant to MCR 7.205(E)(2), the Court orders that the trial court's December 28, 2016 order denying defendant's motion for summary disposition is REVERSED. It is undisputed that but for plaintiff's initial misrepresentation about her residence, defendant would not have issued the policy. Accordingly, plaintiff's misrepresentation was material and it entitled defendant to rescind her policy regardless of intent. *Titan Ins Co* [491 Mich at 556]; *Lash* [210 Mich App at 103]; see also *Keys v Pace*, 358 Mich 74, 81; 99 NW2d 547 (1959). That plaintiff's misrepresentation was no longer false at the time her policy renewed and on the date of loss is of no moment since plaintiff's eligibility for the renewal hinged on the representations made in her initial application. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446-447; 889 NW2d 759 (2016). Defendant's motion for summary disposition should have been granted. [*Jones v Meemic Ins Co*, unpublished order of the Court of Appeals, entered April 19, 2017 (Docket No. 337041).]

[7] *Jones v Meemic Ins Co*, 501 Mich 951 (2018).

7

the insurance policy. Meemic responded to Jones's motion for summary disposition and filed a countermotion for summary disposition. Meemic argued that it was entitled to the return of the $2,500 advance payment because it was unaware of Jones's misrepresentation at the time it made the payment and that Jones owed Meemic $53,356.49 because the lienholder contract is a separate contract under the insurance policy that required Meemic to pay CitiMortgage.

On October 5, 2018, the trial court issued an opinion granting summary disposition in favor of Meemic, and it entered a corresponding order. The court also denied Jones's motion for summary disposition. Jones moved for reconsideration of the trial court's decision; the court denied the motion.

Jones appealed.[8] In an unpublished per curiam opinion, the Court of Appeals reversed the trial court and remanded for proceedings consistent with its opinion.[9] Meemic moved for reconsideration, arguing again that the language of the policy provided it with

---

[8] The Court of Appeals noted, "Jones does not challenge the trial court's holding that Meemic was entitled to summary disposition on its claim that it was entitled to recovery of the $2,500 that it paid to Jones." *Meemic Ins Co v Jones*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2020 (Docket No. 346361), p 3 n 3.

[9] *Id*. at 3-7.

subrogation rights and supported a theory of statutory[10] and equitable subrogation.[11] The Court of Appeals denied the motion.[12]

Meemic appealed in this Court. We directed the Clerk of this Court to schedule oral argument on the application.[13]

## II. APPLICABLE STANDARDS OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of a claim and is subject to de novo review.[14] "In resolving such a motion, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the

---

[10] MCL 500.2833.

[11] Meemic relies on *French v Grand Beach Co*, 239 Mich 575, 580; 215 NW 13 (1927), which explained:

> The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as "legal subrogation," and has long been applied by courts of equity. [Citation omitted.]

[12] *Meemic Ins Co v Jones*, unpublished order of the Court of Appeals, entered July 7, 2020 (Docket No. 346361).

[13] We asked the litigants to address:

> [W]hether its declaration that a homeowners insurance policy was void *ab initio* should be considered a denial of a claim under the policy such that it may invoke its right to subrogation when it was required by a standard mortgage clause to pay the balance of the appellee's mortgage. [*Meemic Ins Co v Jones*, 507 Mich 854 (2021).]

[14] See *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999).

9

parties . . . . If the evidence fails to establish a genuine issue regarding any material fact, the movant is entitled to judgment as a matter of law."[15] Further, "[w]e review de novo, as a question of law, the proper interpretation of a contract."[16]

## III. ANALYSIS

Insurance policies are contracts.[17] We interpret contracts by giving plain meaning to the words and phrases used by the parties.[18] Where the policy lends itself to a clear understanding between the parties, a court will enforce the policy as written.[19] Our interpretation of this policy starts by looking at the provision that identifies the rights and duties of the mortgagee:

> **Rights and Duties Of Mortgagee**. The term "mortgagee" includes a trustee or a land contract holder, if applicable.
>
> If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee and **you**,[20] as interests appear. If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees.
>
> *The interest of the mortgagee under this policy will not be affected by any action or neglect by **you***. The interest of the mortgagee under this policy

---

[15] *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016) (quotation marks and citation omitted).

[16] *Innovation Ventures v Liquid Mfg*, 499 Mich 491; 885 NW2d 861 (2016).

[17] *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

[18] See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012).

[19] See *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

[20] The policy defines the word "you" to include Jones, the named insured.

will terminate unless it notifies **us** of any change of ownership, occupancy or substantial change in risk of which the mortgagee has knowledge and pays upon demand any premium due if **you** fail to do so.

\* \* \*

If **we** pay the mortgagee for any loss and deny payment to **you**:

A. **we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property; or

B. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.[21]

The cited policy language equates to a standard mortgage clause. The lienholder named in the policy declaration is the mortgagee, CitiMortgage. Per the policy language, CitiMortgage's interests are not "affected by any action or neglect by [Jones]."

Michigan courts have repeatedly construed such provisions and reasoned:

[A] lienholder is not subject to the exclusions available to the insurer against the insured because an independent or separate contract of insurance exists between the lienholder and the insurer. In other words, there are two contracts of insurance within the policy—one with the lienholder and the insurer and the other with the insured and the insurer.[22]

Thus, the standard mortgage clause presented in this case "effects a new and independent insurance [that] protects the mortgagee as stipulated, and which cannot be destroyed or impaired by the mortgagor's acts or by those of any person other than the mortgagee or someone authorized to act for him and in his behalf."[23] Consequently, when

---

[21] Emphasis added.

[22] *Foremost Ins Co*, 439 Mich at 384 (citations omitted).

[23] *Id*. at 389-390 (quotation marks and citation omitted).

11

an insurance policy contains a standard mortgage clause, a misrepresentation in the mortgagor's application for insurance does not void the contract between the insurer and mortgagee even when the misrepresentation renders the policy void *ab initio* as to the mortgagor.[24]

The Court of Appeals understood that the insurance contract contained a standard mortgage clause that created a separate, independent contractual obligation (the lienholder contract) between Meemic and CitiMortgage. The panel also recognized that Jones's misrepresentation in her application for insurance did not void the lienholder contract, even though the misrepresentation rendered at least the risk contract void *ab initio* as to Jones.[25] And the panel correctly determined that the plain language of the insurance policy provides that "any action or neglect" by Jones (the named insured) would not prohibit recovery by CitiMortgage (the mortgagee). Ultimately, the panel correctly concluded that this clause created a separate, independent contractual obligation between Meemic and CitiMortgage and that the acts of Jones at the time she procured the insurance policy did not affect the independent contractual obligation between Meemic and CitiMortgage.[26]

The Court of Appeals then turned to the question whether Meemic possesses subrogation rights against Jones even though Meemic declared the policy rescinded. Again, we turn to the language of the policy to determine the intent and understanding of the parties. The insurance policy provides:

---

[24] See, e.g., *Wells Fargo Bank, NA*, 304 Mich App at 529-530. See also Couch, § 65:65, pp 115-117.

[25] See, e.g., *Wells Fargo Bank, NA*, 304 Mich App at 529-530.

[26] *Meemic Ins Co*, unpub op at 5.

If **we** pay the mortgagee for any loss and deny payment to **you**:

A. **we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property; or

B. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.

The plain language of the subrogation clause provides that if Meemic paid CitiMortgage "for any loss" *and* "denied" payment to Jones, Meemic would have rights of subrogation under the policy. Because the policy does not define the term "deny," the Court of Appeals turned to dictionary definitions to decipher its meaning.[27] The panel looked to *Random House Webster's College Dictionary* (1997), which defines "deny" as "to refuse to agree or accede to" and as "to withhold something from, or refuse to grant a request[.]" In contrast, the same dictionary defines "rescind" as "to revoke, annul, or repeal." The panel concluded that the contract only granted Meemic the right of subrogation if it paid CitiMortgage and denied Jones's claim under the insurance policy—as opposed to rescinding Jones's rights under the insurance policy.[28]

Meemic argues that "the misrepresentations and the resulting rescission of the policy are merely the basis for the denial of coverage, not something separate and distinct from the denial." Meemic similarly points out that *Random House Webster's College Dictionary* (2001) defines "deny" as "to refuse to agree or accede to"; as "to withhold the possession,

---

[27] See *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007).

[28] *Meemic Ins Co*, unpub op at 6-7.

13

use, or enjoyment of"; as "to withhold something from, or refuse to grant a request of"; and as "to refuse to recognize or acknowledge, disavow, repudiate[.]" Meemic argues:

> Applying this definition, the question is whether Meemic refused to agree to Jones'[s] claim, whether it refused to grant her request for coverage, and whether it disavowed and repudiated her claim. The only answer to these questions is yes it did. And that is exactly why it told Jones that her claim was denied.

Both the Court of Appeals' and Meemic's interpretation of the subrogation provision miss the mark. We first highlight that the language expressly at issue relates to the denial of "payment" not the denial of a "claim." Meemic clearly did not rescind payment to Jones. Indeed, if Meemic had rescinded payment, this would imply that the payment was made, not denied. Further, while the rescission of the policy is arguably different from the denial of a "claim" under that policy, the same cannot be said about the denial of "payment" under the separate provision allowing Meemic to recoup payments made under the lienholder contract. The denial-of-payment language under this subrogation provision is independent from the validity of the risk contract. The subrogation provision becomes relevant when the insurer pays the mortgagee for any loss due under the lienholder contract. When this occurs, the simple question under the subrogation provision is whether Meemic denied payment under the insurance policy to Jones. In other words, the language does not require an additional assessment of the reasons underlying the denial of payment. In this case, the lienholder contract required Meemic to pay Citibank for the loss, and Meemic denied payment to Jones. These facts remain true regardless of whether Meemic rescinded the policy with Jones. Accordingly, we conclude that because Meemic paid CitiMortgage for a loss and denied payment to Jones, the subrogation clause is enforceable.

14

We reject Jones's argument that because "Meemic elected to declare the policy void *ab initio* from date of inception, the subrogation provision upon which Meemic attempted to rely, never existed." We also reject the notion that the parties to the insurance contract intended the subrogation provision to apply to the risk contract and not to the lienholder contract. Meemic could have and, indeed, should have been more precise in executing its rescission, which applied to the risk contract in the insurance policy. Nonetheless, Meemic's lack of precision is not fatal to its claim. Portions of a rescinded contract may nonetheless be enforceable.[29] We look to the terms of the rescinded contract to determine the intent of the parties. If it is evident from the contract language that the parties intended a portion of the contract to remain enforceable notwithstanding rescission, courts must execute the intent of the parties.[30] As previously established, Michigan courts have long held that a standard mortgage clause is a separate contract within the policy that protects a lienholder regardless of "any action or neglect by [the insured]." In procuring the policy, Jones signed documents acknowledging that any misrepresentation on her part could result in rescission of the policy. Taken together, we conclude that the parties understood that at least the lienholder contract would survive if the actions or neglect of Jones resulted in rescission of the policy. Thus, the question turns on whether the subrogation provision applies to the lienholder contract, which survives rescission, or whether, instead, it is consumed by the risk contract, which was properly rescinded because of Jones's misrepresentations. We hold that the subrogation

---

[29] *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 640-641; 534 NW2d 217 (1995).

[30] *Id*.

15

provision applies to the lienholder contract and that it therefore was not rescinded along with the risk contract. The risk contract "covers risk and outlines exclusions for the insured and the insurer."[31] The subrogation provision plainly does not pertain to risk and exclusions, and as explained earlier, the subrogation provision is only operable when the lienholder contract is triggered. Again, a policy with a standard mortgage clause "constitutes two separate contracts of indemnity [that] relate to the same subject matter, but cover distinct interests therein[.]"[32] Further, "[u]nder the standard loss payable clause, the consideration for the insurer's contract with the lienholder is that which the insured paid for the policy itself."[33] And by returning all the policy payments Jones had made, Meemic thereby refunded the consideration for both contracts to Jones.

It follows that the subrogation provision is not rescinded by Meemic's act of rescission of the insurance policy. Even though the lienholder contract is an independent contract between Meemic and CitiMortgage, we discern no basis to question Meemic's assertion of the subrogation provision against Jones. While Jones may or may not be a party[34] to the lienholder contract, she nonetheless supplied the consideration for both the risk and lienholder contracts; she agreed to the subrogation provision within the policy; and she only stood to benefit from Meemic's payment to CitiMortgage. Accordingly, we hold that Jones has provided no basis in law or equity to challenge Meemic's reliance on the

---

[31] *Foremost*, 439 Mich at 388.

[32] *Id*. at 390 (quotation marks and citation omitted).

[33] *Id*. at 384.

[34] But see note 3 of this opinion.

16

subrogation provision. We reverse the judgment of the Court of Appeals and reinstate the

final judgment of the Wayne Circuit Court.[35]

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement

---

[35] The dissent acknowledges that "Meemic was entitled to invoke its rights to seek reimbursement under the standard mortgage clause and that the Court of Appeals clearly erred by holding otherwise." (Citation omitted.) The Court is unanimous on this point. The dissent faults the Court's opinion because it does not address "whether the trial court erred by granting summary disposition in favor of Meemic, awarding a monetary judgment in the amount of $53,356.49 . . . ." We disagree. The trial court properly granted summary disposition in favor of Meemic because there is no question that Meemic established that "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10) (emphasis added).

In regard to the amount of damages, we do not dispute that throughout these proceedings, Meemic has relied only on the policy language to recover a money judgment against Jones for the balance of the mortgage, though the policy language recites a remedy that may also have been available in equity under the common law of subrogation. If so, Meemic might have been able to plead an action for equitable subrogation outside of the policy language, but it did not. Arguably, after the Court of Appeals held that Jones was entitled to relief under MCR 2.116(C)(8), plaintiff could have sought to amend its complaint under MCR 2.116(I)(5) rather than filing an application for leave to appeal in this Court. The dissent acknowledges as much, noting it would allow Meemic "to invoke equity as a theory for relief . . . [and] return to the trial court and seek leave to amend its complaint to add a claim for equitable subrogation. MCR 2.118(A)(2)." This acknowledgement alone belies the dissent's assertion that "Meemic's claim of a legal right to repayment needed to be justified with specific reference to CitiMortgage's rights under the mortgage on the property." Despite the myriad questions of procedure and remedy that relate to actions in this context, see Comerford, Jr., *When is Money Paid The Mortgagee Recoverable?—Is the Counterclaim Compulsory?*, 22 Tort Trial & Ins Prac LJ 113, 123 (1986), the fact remains that Jones has never challenged the propriety or amount of the money judgment. Indeed, the issue that the dissent discusses is not only unpreserved, the issue has not even been presented before any court. Contrary to the dissent's claim, we choose not to "set the future course of Michigan's caselaw" by declining to address this peripheral issue. We decide the case only on the facts and legal arguments presented to us.

17

# STATE OF MICHIGAN

## SUPREME COURT

MEEMIC INSURANCE COMPANY,

      Plaintiff-Appellant,

v                                                                                                No. 161865

ANGELA JONES,

      Defendant-Appellee.

_____

WELCH, J. (*dissenting*).

In this case, we consider whether Meemic Insurance Company's declaration that Angela Jones's homeowner's insurance policy was void *ab initio* "should be considered a denial of a claim under the policy such that it may invoke its right to subrogation when it was required by a standard mortgage clause to pay the balance" of Jones's mortgage. *Meemic Ins Co v Jones*, 507 Mich 854 (2021). I agree with the majority that, under these circumstances, Meemic was entitled to invoke its rights to seek reimbursement under the standard mortgage clause and that the Court of Appeals[1] clearly erred by holding otherwise. I respectfully dissent from the majority opinion because it does not address whether the trial court erred by granting summary disposition in favor of Meemic, awarding a monetary judgment in the amount of $53,356.49, without first determining that CitiMortgage's rights as a mortgagee would have entitled it to recover against Jones so that Meemic, who was acting as a subrogee of CitiMortgage, would also be entitled to recover against Jones.

---

[1] *Meemic Ins Co v Jones*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2020 (Docket No. 346361).

Although the Court of Appeals made a legal error in its rationale for reversing the trial court, it does not necessarily follow that the trial court's rationale for granting summary disposition was correct. Because Meemic has not identified, specifically, why the standard mortgage clause entitles CitiMortgage, and thus subrogee Meemic, to reimbursement from Jones as a matter of law, I would hold that the Court of Appeals correctly reversed the trial court's order granting summary disposition but for the wrong reason. To the extent the majority's opinion suggests otherwise, I respectfully dissent.

"It is well settled that a policy's standard mortgage clause constitutes a separate and distinct contract between a mortgagee and an insurance company for payment on the mortgage." *Singer v American States Ins*, 245 Mich App 370, 379; 631 NW2d 34 (2001); *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 384; 486 NW2d 600 (1992). Its purpose is to allocate the risk to the insurer that the insured might, as here, act in a manner that jeopardizes insurance coverage because the insurer is better positioned than the mortgagee to evaluate the insured's underwriting risk. *Foremost Ins Co*, 439 Mich at 384. The result is that the mortgagee will be protected from loss even if the insured is denied coverage. *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 526-527; 847 NW2d 657 (2014). Accordingly, I agree with the majority that Meemic remained contractually obligated under this separate and distinct contract to pay CitiMortgage (Jones's mortgagee) for the loss that would have otherwise been covered absent Jones's conduct that resulted in the rescission of her homeowner's insurance policy.

This payment, however, does not leave Jones with a windfall in the amount of her paid-off mortgage. Rather, in addition to requiring payment to the mortgagee, the standard mortgage clause provides the insurer two paths for potential reimbursement. In *Wilson v*

2

*Home Owners Mut Ins Co*, 148 Mich App 485, 490-491; 384 NW2d 807 (1986), our Court of Appeals correctly explained that the standard mortgage clause "provides that an insurer may make a payment of loss to a mortgagee, and to the extent of that payment, may be subrogated to all the mortgagee's rights of recovery *or* the insurer may pay off the mortgage debt and require an assignment of the mortgage." In other words, the insurer "choose[s] between pursuit of its rights as a subrogee of a mortgagee or to pursue its rights as an assignee of the mortgagee." *Id*. at 491. The policy language at issue in this case presented Meemic with that same choice:

> If **we** pay the mortgagee for any loss and deny payment to **you**:
>
> A. **we** will be *subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property*; or
>
> B. at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. *In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt.* [Emphasis added.][2]

Even if it has a pathway for reimbursement, Meemic has never explained *how* it is legally entitled to recover from Jones the amount of its payment to CitiMortgage. In its complaint, Meemic cited the standard mortgage clause and claimed it "is entitled to be subrogated to the extent of its payments to all rights that the mortgagee has under the mortgage on the property and has a full assignment and transfer of the mortgage and all securities." This allegation, which was not pleaded in the alternative, should give us pause.

---

[2] The inclusion of a standard mortgage clause is mandated by MCL 500.2833(1)(j) for fire insurance policies, and "it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose." *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525 n 3; 502 NW2d 310 (1993) (quotation marks and citation omitted).

3

Under the standard mortgage clause, Meemic could choose to either (1) subrogate itself to the mortgagee's rights under the mortgage on the property or (2) pay the whole principal of the mortgage debt and any interest due and obtain a full assignment and transfer of the mortgage and related securities. The standard mortgage clause does not allow for both options. In its summary-disposition motion that led to this appeal, Meemic set aside its earlier assertion that it had received an assignment and transfer of the mortgage from CitiMortgage, and there is no evidence in the record of any such assignment and transfer. If Meemic had actually received a full assignment and transfer of the mortgage and related securities from CitiMortgage, then it could pursue the mortgagee's rights directly. Meemic's decision not to pursue this path means that it's only path to reimbursement is based on its status as a subrogee of CitiMortgage.

The problem remains that Meemic has never set forth the scope of CitiMortgage's rights as the mortgagee and thus never set forth the scope of its rights as a subrogee. In its countermotion for summary disposition, Meemic merely contended that it was contractually entitled through subrogation to recover directly from Jones the amount it had paid to CitiMortgage and "[a]s such, Meemic is entitled to judgment as a matter of law." I am unconvinced that this bare assertion, without more, engenders a sufficient legal basis for Meemic to immediately obtain a judgment in the amount it paid to CitiMortgage. "As a subrogee, one stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor." *Yerkovich v AAA*, 461 Mich 732, 737-738; 610 NW2d 542 (2000). What are the legal rights possessed by CitiMortgage as subrogor? Meemic has not provided this information, and it is neither our job nor the trial court's job to speculate. Meemic has not carried its burden as the plaintiff and summary-disposition movant to

4

establish CitiMortgage's rights that, when subrogated, would provide Meemic with a basis for the relief requested.

Generally, "subrogation" is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." *Black's Law Dictionary* (11th ed). There are two forms of subrogation: conventional and equitable. "Conventional subrogation" is "[s]ubrogation that arises by contract." *Id*., p 1726. "Equitable subrogation" or "legal subrogation" is "[s]ubrogation that arises by operation of law or by implication in equity to prevent fraud or injustice." *Id*. It usually arises, by way of one example, when a "party pays to protect its own rights or property." *Id*. Michigan law has long been in accordance with these understandings. See *French v Grand Beach Co*, 239 Mich 575, 580; 215 NW 13 (1927); 23 Michigan Civil Jurisprudence, Subrogation (2020 rev), § 3, pp 5-6 ("The right to subrogation may arise: (1) by virtue of an agreement between the subrogee and the subrogor, or by way of contractual assignment; (2) through judicial device, or by operation of law from the relations of various involved parties under equitable principles; and (3) by virtue of statute.") (citations omitted).

Despite repeated references to equity or equitable subrogation in its briefing, Meemic never pleaded a right to equitable relief.[3] Instead, it only pleaded a claim for conventional subrogation arising out of contract. Accordingly, Meemic can claim under the contract only "the rights that the mortgagee has under the mortgage on the property"—

---

[3] If Meemic seeks to invoke equity as a theory for relief, it could return to the trial court and seek leave to amend its complaint to add a claim for equitable subrogation. MCR 2.118(A)(2).

5

that is, the rights CitiMortgage had to give. If Meemic stands in the shoes of CitiMortgage and obtains no greater rights than CitiMortgage would have had, *Yerkovich*, 461 Mich at 738, Meemic's claim of a legal right to repayment needed to be justified with specific reference to CitiMortgage's rights under the mortgage on the property. That never occurred in this case.

Contrary to the majority's assertion, this issue is not merely about the amount of damages; it is at the core of the legal theory upon which Meemic's legal claim for monetary recovery must be based. Even if Meemic is ultimately entitled to some form of monetary recovery (thereby avoiding a windfall to Jones), this Court should not overlook the incomplete showing and flawed legal theory for relief in this matter. Nor should it set the future course of Michigan's caselaw by it.

The weight of caselaw states that when a mortgagor's fraud vitiates a policy, the mortgagor has no right to have the insurer's payment to the mortgagee under a standard mortgage clause applied to reduce the mortgage debt. See, e.g., *Wholesale Sports Warehouse Co v Pekin Ins Co*, 587 F Supp 916, 920 (SD Iowa, 1984) (applying Iowa law); *Northwest Farm Bureau Ins Co v Althauser*, 90 Or App 13, 17; 750 P2d 1166 (1988); *American Central Ins Co v Lee*, 273 Ga 880, 882-883; 548 SE2d 338 (2001); 16 Couch, Ins, 3d, § 224:27, pp 44-48 (citing decisions from, among other places, Connecticut, Maryland, New York, and West Virginia). Instead, following the insurer's payment to the mortgagee, the opportunity for the insurer's potential reimbursement generally proceeds only through the former legal position of the mortgagee. The Connecticut Supreme Court explained:

6

The effect of this mortgage clause is that from the time the policy becomes void as to the mortgagor the insurance is only in favor of the mortgagee on its interest as such and not an insurance on the property generally, to which the mortgagor, or his successor in interest therein, should be entitled. That the mortgagee should receive the primary benefit, *and the insurers the opportunity for ultimate reimbursement through such security as the mortgage note and mortgage may afford,* accords with the general legal and equitable rights of the parties. *The insurers, through their subrogation, virtually occupy the position of a purchaser from the mortgagee for value. The payment, by them, does not operate to reduce or extinguish the mortgage debt or discharge the mortgage, but to satisfy,* pro tanto*, the mortgagee's claim and assign it to the insurers, leaving it in full force as against the mortgagor and those claiming under him, with no right, on their part, to claim a reduction of the debt by the payment to the mortgagee.* [*Savings Bank of Ansonia v Schancupp*, 108 Conn 588, 596; 144 A 36 (1928) (citations omitted; emphasis added).]

As a subrogee, Meemic stands in CitiMortgage's shoes and proceeds "through such security as the mortgage note and mortgage may afford," akin to a purchaser for value. See *id*. Meemic never established CitiMortgage's rights as the mortgagee that, when subrogated, provide the basis for the relief requested. Meemic should not have prevailed on summary disposition—at least not yet and not on the basis of an incomplete articulation of its legal right to recovery as a subrogee. I therefore respectfully dissent.

Elizabeth M. Welch
Megan K. Cavanagh

7