*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER OTTOMAN and MARCIA OTTOMAN,

UNPUBLISHED
February 29, 2024

        Plaintiffs/Counterdefendants-
Appellants,

v

No. 361457
Washtenaw Circuit Court
LC No. 18-000919-NZ

DAVID GLASS, DENISE M. NICHOLS, and JAN
E. SLOTNICK, also known as JAN E. SLOTKIN,

        Defendants-Appellees,

and

RL & DG INVESTMENTS LLC,

        Defendant/Cross-Defendant-Appellee,

and

MICHAEL S. HAKALA and DANIELLE
HAKALA,

        Defendants/Counterplaintiffs/Cross-
Plaintiffs-Appellees.

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

This case arises out of a series of lawsuits brought by plaintiffs, Roger and Marcia Ottoman, involving their claim to a property in Chelsea, Michigan. Undeterred by prior legal setbacks, the Ottomans brought the current lawsuit in 2018, alleging that they were defrauded out of the property because their signatures were forged on a deed. The circuit court quieted title to the property in favor of defendants, Michael and Danielle Hakala, and granted summary disposition and awarded sanctions to the Hakalas and defendants, David Glass, Denise Nichols, and RL & DG Investments

-1-

LLC (RLDG and the RLDG defendants). The circuit court correctly determined that the Ottomans' claims were barred by the doctrines of res judicata and collateral estoppel. The court also did not err in awarding sanctions against the Ottomans for their continued pursuit of a legally meritless lawsuit. We affirm.

## I. BACKGROUND

The Ottomans have been embroiled in legal battles over the property at 12634 McKinley Heights since 2003. To save their home from a prior creditor, the Ottomans arranged for RLDG to purchase the property. The Ottomans would remain on the land and pay monthly rent with the option to purchase. The Ottomans fell behind in payments and RLDG filed a district court action to take possession of the property. In a 2008 judgment, the district court ruled that RLDG had an equitable mortgage and the Ottomans had a right of redemption.

Claiming that the Ottomans defaulted on the equitable mortgage, RLDG filed a circuit court action to seek foreclosure in 2009. Defendant, Jan Slotnick, an attorney who had represented the Ottomans in the earlier district court proceeding, filed an answer and counterclaim on the Ottomans' behalves. The matter resolved in a December 2009 settlement agreement, which allowed the Ottomans to live rent-free on the property until March 1, 2012, gave them until that date to secure financing to purchase the home from RLDG, and required the Ottomans to execute a quitclaim deed to be held in escrow. The circuit court later entered a stipulated order dismissing the case.

Before the settlement agreement was entered, the Ottomans filed for Chapter 7 bankruptcy and Marcia Ottoman was incarcerated in federal prison after pleading guilty to charges of attempting to defraud her in-laws.[1] At a December 2009 creditor's hearing, Roger Ottoman testified on his own behalf and with Marcia Ottoman's power of attorney. He testified that Slotnick was presently representing the Ottomans and negotiated a settlement allowing them to retain possession of the property rent-free for two years. The bankruptcy court accepted this testimony as true and treated the right to live rent-free as an asset. The Ottomans paid the value of that asset to the bankruptcy trustee.

The Ottomans did not pay off the property by March 1, 2012. RLDG filed an affidavit of lost deed with the register of deeds. Denise Nichols notarized the affidavit signed by David Glass, an RLDG member. RLDG asserted that it lost the original quitclaim deed, which was signed by the Ottomans on July 1, 2010, so it filed a copy of the signed deed. RLDG then filed a district court action to evict the Ottomans and take possession based on the quitclaim deed.

---

[1] According to contemporaneous news reports, Marcia Ottoman "had posed as a federal prosecutor in letters to her in-laws, ordering them to evict tenants from a farm they owned so that she and her husband could move to the property." Susan Oppat, *Former Dexter Township Trustee Marcia Ottoman Sentenced to Prison*, MLive, November 20, 2008, available at <https://www.mlive.com/news/ann-arbor/2008/11/former_dexter_township_trustee.html> (accessed February 20, 2024).

Assisted by new counsel, the Ottomans filed an answer and counterclaim. They asserted fraud as an affirmative defense and alleged that RLDG defrauded them into signing the quitclaim deed. They also complained that RLDG moved its offices and purposefully withheld the new address from the Ottomans, hindering their efforts to secure financing to redeem the property under the settlement agreement. At a June 2012 hearing, with the Ottomans present, their attorney argued that enforcement of the settlement agreement was premature. The Ottomans' attorney also claimed that the settlement agreement was a "component of fraud" and alleged that "this whole transaction stem[s] from my client walking into [RLDG] to obtain a mortgage, only to come out of that place, signing the Deed away to the place and not even realizing it." The Ottomans did not allege that their signatures had been forged on any documents. The district court ordered discovery, but the Ottomans did not respond to discovery requests. The Ottomans' attorney asserted a breakdown in the attorney-client relationship and withdrew. But the Ottomans claimed that their attorney did not communicate with them and that they never received the discovery requests. The district court found no triable issue of fact and granted judgment in RLDG's favor. The Ottomans left the home in October 2012, and RLDG sold the property to the Hakalas in May 2013.

The Ottomans claim that they slowly received information leading them to believe someone had forged their signatures on the quitclaim deed. They hired an expert in 2016, who opined that someone cut their signatures from a 2006 document and pasted them onto the 2010 deed. The Ottomans waited until August 2018 to file the current circuit court action. The Ottomans raised a claim of fraud by forgery against the RLDG defendants, alleging that they forged the Ottomans' signatures on the 2009 settlement agreement and 2010 quitclaim deed. The Ottomans also accused all defendants of a civil conspiracy to defraud them of their property. The Ottomans denied any knowledge of the 2009 circuit court action, claiming that Slotnick acted without their knowledge or consent. The Ottomans also claimed that they did not know the 2009 settlement agreement had been entered or a quitclaim deed had been signed. The Hakalas counterclaimed against the Ottomans, seeking to quiet title in the property. In October 2018, counsel for RLDG wrote a letter to the Ottomans' counsel, warning that the Ottomans were attempting to relitigate issues already decided in the 2012 district court case and advising the Ottomans' counsel that RLDG intended to seek sanctions if the Ottomans did not dismiss their complaint. The Hakalas and the RLDG defendants ultimately filed motions for summary disposition, contending that the Ottomans' claims were precluded by res judicata and judicial estoppel. The Ottomans responded to the motions, arguing that their claim of fraud by forgery had never been raised or litigated before the current lawsuit. Attached to their response were affidavits from Roger and Marcia Ottoman; the Ottomans both attested that they were unaware of any settlement agreement, they never signed the quitclaim deed, and they did not hire Slotnick to represent them in the 2009 circuit court case.

The Ottomans also successfully petitioned to reopen their bankruptcy case, leading to a stay in the current circuit court action. In the bankruptcy court, the Ottomans sought to void the 2009 settlement agreement, 2010 quitclaim deed, and 2012 district court judgment as violations of an automatic stay that had been issued in the 2009 bankruptcy proceeding. The parties submitted several rounds of pleadings to the bankruptcy court and hearings were conducted. The Ottomans presented the issue of fraud to the court, contending that their signatures on the 2009 settlement agreement and 2010 quitclaim deed were forged. In an October 2020 opinion, the bankruptcy court cited Roger Ottoman's testimony at the December 2009 bankruptcy court hearing as evidence that he was aware of the settlement agreement and its terms. The court also cited

discussions from the June 2012 district court hearing as evidence that the Ottomans knew about—and possessed copies of—the settlement agreement, the affidavit of lost quitclaim deed, and the signed copy of the deed. Because the Ottomans participated in the violations of the stay that they alleged and never made any argument about the stay in earlier proceedings, the bankruptcy court ruled that the Ottomans waived their right to challenge violations of the stay. The bankruptcy court also determined that, under the doctrines of res judicata and collateral estoppel, the 2012 district court judgment precluded relitigation of the Ottomans' claim of ownership of the property. The bankruptcy court therefore denied the Ottomans' request to void any documents and court judgments.

Back in the circuit court, the Hakalas and the RLDG defendants filed renewed motions for summary disposition, arguing that the 2020 bankruptcy opinion also precluded the Ottomans' fraud claims. The RLDG defendants also requested an award of attorney fees and costs as sanctions for the Ottomans' frivolous lawsuit. The circuit court granted the motions and dismissed the Ottomans' claims on res judicata and collateral estoppel grounds. The court also sanctioned the Ottomans, awarding attorney fees and costs incurred by the RLDG defendants following the 2020 bankruptcy opinion. In a subsequent order, the court quieted title in the Hakalas' favor.[2]

The Ottomans now appeal as of right.

## II. SUMMARY DISPOSITION

The Ottomans seek reversal of the circuit court's ruling on summary disposition, arguing that their claims were not barred by the doctrines of res judicata, collateral estoppel, or judicial estoppel. They assert that the presence of extrinsic fraud prevented them from having an adversarial trial on the issue of the allegedly forged deed, and they posit that the issue of fraud was either not actually litigated or not necessarily determined in prior proceedings.

## A. PRINCIPLES OF LAW

We review de novo a circuit court's resolution of a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The applicability of res judicata and collateral estoppel are also reviewed de novo. *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019). On de novo review, "we give respectful consideration, but no deference" to the circuit court's legal rulings. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 695; 992 NW2d 332 (2022). By dismissing the Ottomans' claims on the basis of res judicata and collateral estoppel, the trial court necessarily determined that summary disposition was appropriate under MCR 2.116(C)(7). See *King*, 329 Mich App at 598. "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). Any documentary evidence submitted by the parties must be reviewed to determine whether there is a genuine issue of material fact. *Id*. at 429. "If no

---

[2] Slotnick never responded to the complaint, and the circuit court entered a default judgment against her in the Ottomans' favor. That judgment is not at issue on appeal.

-4-

facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*.

The parties disagree about the applicability of the doctrines of res judicata, collateral estoppel, and judicial estoppel to these facts. First, "[t]he doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). Res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. The doctrine is applied broadly, barring "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id*.

"Whereas res judicata involves preclusion of entire claims, collateral estoppel focuses on specific issues within an action." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282-283; 983 NW2d 401 (2022). For collateral estoppel to apply, "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2016) (cleaned up). "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v State Farm Ins Co*, 469 Mich 679, 684; 677 NW2d 843 (2004) (cleaned up). Further, "[t]he issues must be identical, not merely similar, and the ultimate issues must have been both actually and necessarily litigated." *Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 376-377; 521 NW2d 847 (1994) (cleaned up).

Related is the equitable doctrine of judicial estoppel. Although the circuit court did not rule on whether judicial estoppel barred the Ottomans' claims, the parties disputed this issue below. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (cleaned up). Put differently, the doctrine "precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014) (cleaned up). For judicial estoppel to apply, the party must have "unequivocally and successfully" advanced a "wholly inconsistent" theory. *Id*. (cleaned up). Because judicial estoppel promotes "truthfulness and fair dealing in court proceedings," a critical factor in determining its applicability is "whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped." *Dep't of Transp v Riverview-Trenton R Co*, 332 Mich App 574, 594; 958 NW2d 246 (2020) (cleaned up).

## B. EXTRINSIC FRAUD

The Ottomans claim that the presence of extrinsic fraud prevented them from receiving an opportunity to contest the alleged forgery of the deed in prior litigation.

Extrinsic fraud provides a narrow exception to the application of res judicata. *Sprague v Buhagiar*, 213 Mich App 310, 313; 539 NW2d 587 (1995). Extrinsic fraud is characterized as "fraud outside the facts of the case: fraud which actually prevents the losing party from having an

adversarial trial on a significant issue." *Id*. (cleaned up). Intrinsic fraud, on the other hand, "is a fraud within the cause of action itself." *Id*. at 314. Examples of intrinsic fraud include "perjury, discovery fraud, fraud in inducing a settlement, or fraud in the inducement or execution of the underlying contract." *Id*. (cleaned up).

The Ottomans actually have alleged intrinsic, not extrinsic, fraud. The Ottomans would have known in December 2009 if they had not signed the settlement agreement because Roger Ottoman testified about the settlement agreement that month at a bankruptcy court hearing.[3] They would have known by the 2012 eviction proceeding if they had not signed the quitclaim deed. The deed was attached to RLDG's complaint and discussed at the June 2012 district court hearing at which the Ottomans were present, putting them on notice of its existence. Yet they never alleged in the 2012 district court action that their signatures on the deed stemmed from forgery. The Ottomans were not prevented from "having an adversarial trial on a significant issue." *Sprague*, 213 Mich App at 313. Therefore, any alleged fraud does not bar the application of res judicata.

The exclusive remedy for intrinsic fraud is to move for for relief from judgment in the same proceeding under MCR 2.612(C). *Id*. at 314. MCR 2.116(C)(1)(c) permits a party to seek relief from a judgment based on "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." A motion for relief from judgment based on fraud must be filed "within one year after the judgment, order, or proceeding was entered or taken." MCR 2.612(C)(2). The Ottomans could have moved for relief from the 2009 circuit court stipulated order of dismissal or the 2012 district court judgment under MCR 2.612(C), but they did not. Having sat on their rights for at least six years, the Ottomans cannot now use the presence of an allegedly forged settlement agreement or deed as a shield from the application of preclusion doctrines.

## C. PRECLUSION

Next, the Ottomans argue that their claims are not barred by res judicata or collateral estoppel because the issue of the forged deed was neither litigated in the 2012 district court case nor necessarily determined in the 2020 bankruptcy court opinion.

## 1. 2012 DISTRICT COURT PROCEEDINGS

The 2012 district court case involved summary proceedings because RLDG filed a complaint to recover possession of the property occupied by the Ottomans. See MCL 600.5701(a) (" 'Summary proceedings' means a civil action to recover possession of premises . . . ."). Special rules apply when determining the res judicata effect of summary proceedings. MCL 600.5750 states that "[a] judgment for possession" in summary proceedings "does not merge or bar *any other* claim for relief . . . ." (Emphasis added). In other words, MCL 600.5750 represents a statutory exception to the doctrine of res judicata, in that claims that *could have been* litigated in summary proceedings are not barred in a subsequent action. See *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 576; 621 NW2d 222 (2001); *JAM Corp v AARO Disposal, Inc*, 461 Mich 161, 167-170; 600

---

[3] The settlement agreement was signed and dated December 18, 2009, while Roger Ottoman's testimony occurred on December 23, 2009.

NW2d 617 (1999). Res judicata still applies, however, to bar claims that were *actually* litigated in summary proceedings from being raised in a later case. *Sewell*, 463 Mich at 577. "To be actually litigated, a question must be put into issue by the pleadings, submitted to the trier of fact, and determined by the trier." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 529; 866 NW2d 817 (2014). In addition, "[t]he parties must have had a full and fair opportunity to litigate the issues in the first action." *Id*.

In the 2012 district court action, RLDG sought to recover possession of the property, asserting ownership as evidenced by the 2010 quitclaim deed. The Ottomans' answered the complaint and denied that RLDG was entitled to possession of the property because the deed "was a product of fraud." The Ottomans also asserted fraud as an affirmative defense. At a hearing, their attorney argued fraud but did not claim that the Ottomans' signatures on the deed were forged. Ultimately, after the Ottomans failed to respond to discovery requests, the 2012 district court entered judgment for RLDG, determining that there was no triable issue and that RLDG was entitled to possession of the property. The Ottomans did not appeal this judgment, and RLDG sold the property to the Hakalas in 2013.

In the present case, the Ottomans alleged in their complaint that fraud perpetrated by defendants wrongfully deprived them of their property, so they had the right to the property's title. That is, through their claims of fraud by forgery and civil conspiracy, the Ottomans are seeking to regain possession and ownership of the property. Just as the bankruptcy court concluded in 2020, however, the 2012 district court judgment has preclusive effect on the Ottomans' alleged entitlement to possession and ownership. The district court decided the prior action on its merits, the Ottomans and RLDG were parties in both actions,[4] and the claim of possession and ownership was resolved in the district court. See *Adair*, 470 Mich at 121. Although the specific claim of fraud *by forgery* was never decided in the district court,[5] this claim is simply a vehicle to obtain title to the property. Thus, to litigate the claim of fraud by forgery would in essence be to relitigate the already-decided claim of possession and ownership. Allowing this maneuver conflicts with the purpose of res judicata: "to prevent multiple suits litigating the same cause of action." *Adair*, 470 Mich at 121. Without extrinsic fraud, the Ottomans do not get another bite of the apple whether they personally ignored discovery requests in the district court case or their attorney dropped the ball. See *Amco Builders & Developers, Inc v Team Ace Joint Venture*, 469 Mich 90, 96; 666 NW2d 623 (2003) (explaining the general rule that "an attorney's negligence is attributable to that attorney's client"). Res judicata therefore bars the Ottomans' attempt to relitigate ownership and fraud.

---

[4] Through their purchase of the property, the Hakalas are in privity with RLDG. See *Mecosta Co Med Ctr*, 509 Mich at 283 (explaining that privity has been broadly defined as "mutual or successive relationships to the same right of property") (cleaned up).

[5] In finding no triable issues of fact, the district court necessarily rejected the Ottomans' broad assertions of fraud that had been raised in their answer and affirmative defenses.

## 2. 2020 BANKRUPTCY COURT PROCEEDING

The 2020 opinion of the bankruptcy opinion provides another layer of preclusion. It is beyond dispute that "res judicata can be invoked in a lawsuit on the basis of an earlier bankruptcy proceeding." *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 692; 762 NW2d 529 (2008). See also *Katchen v Landy*, 382 US 323, 334; 86 S Ct 467; 15 L Ed 2d 391 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."). The bankruptcy court noted that in the 2012 district court case, the Ottomans alleged that the quitclaim deed was invalid as a product of fraud. The bankruptcy court held that the 2012 district court judgment actually and necessarily decided the issue of ownership of the property and the Ottomans had a full and fair opportunity to litigate this issue. The Ottomans were therefore barred by res judicata and collateral estoppel, the court concluded, from contesting that RLDG owned the property. The bankruptcy court's determination of preclusion *itself* precludes the Ottomans from arguing in this case that res judicata and collateral estoppel do not bar their claims.

For collateral estoppel, the issue of whether the Ottomans were precluded from challenging the 2012 district court judgment was "actually litigated and determined by a valid and final judgment" in the bankruptcy case, the Ottomans had a "full and fair opportunity to litigate the issue," and there was "mutuality of estoppel" because RLDG was a party in the bankruptcy court. *William Beaumont Hosp*, 315 Mich App at 398 (cleaned up). The Ottomans argue that they were not collaterally estopped from challenging the settlement agreement and lost deed on fraud and forgery grounds in the circuit court because although the bankruptcy court found these arguments to be precluded by the 2012 district court judgment, that finding was not "necessarily determined," *Rental Props Owners Ass'n*, 308 Mich App at 528, and was not a "question of fact essential to the judgment," *William Beaumont Hosp*, 315 Mich App at 398.[6] The Ottomans, however, injected these issues into the reopened bankruptcy proceeding. They presented affidavits to the bankruptcy court swearing that they did not sign the settlement agreement or the 2010 quitclaim deed. The Ottomans asked the bankruptcy court to consider these factual issues anew and the bankruptcy court determined it was precluded from doing so by an earlier, unappealed court judgment. A party may not ask a court to resolve an issue and then claim the court's resolution was unnecessary or gratuitous. See *Clohset v No Name Corp*, 302 Mich App 550, 566; 840 NW2d 375 (2013) ("[I]t is fundamental that a party may not create error in a lower court, and then claim on appeal that the error requires reversal."); *Gursten v Kenney*, 375 Mich 330, 335; 134 NW2d 764 (1965) (explaining that the plaintiff chose to pursue a matter before a bankruptcy court and "[h]aving made that choice, [the plaintiff] was under obligation to pursue it or abide by an adverse result because of his failure to do so").

---

[6] The Ottomans contend that the bankruptcy court should not have given the 2012 district court judgment preclusive effect because the district court did not have jurisdiction to resolve the title issue. Under the "raise or waive" rule of issue preservation, we decline to consider this issue because the Ottomans failed to raise it in the circuit court. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3 ("If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue.").

The Ottomans also claim that the 2020 bankruptcy court opinion cannot be given preclusive effect because that court made several erroneous factual findings. This is not a ground to avoid a judgment in a prior action. If a party believes a court made an error, the party's recourse is direct appeal. The party may not raise a collateral attack in a separate proceeding to another court's legal reasoning or factual findings. *Foster v Foster*, 509 Mich 109, 121; 983 NW2d 373 (2022), mod on other grounds 509 Mich 988 (2022). The Ottomans did not appeal the 2020 bankruptcy court opinion and are now bound by it. They may not challenge the bankruptcy court's analysis or findings in the Washtenaw Circuit Court or this Court.

## D. JUDICIAL ESTOPPEL

Even if res judicata and collateral estoppel did not bar the Ottomans' present lawsuit, judicial estoppel would serve as the nail in the coffin. As discussed, the Ottomans alleged in their complaint that the RLDG defendants forged the Ottomans' signatures on the quitclaim deed and filed a fraudulent copy of the deed. The Ottomans also alleged that Slotnick never provided them with the settlement agreement when it was entered in 2009. The Ottomans went further as this litigation progressed, swearing in affidavits that Slotnick did not represent them in the 2009 circuit court proceeding[7] and that they never signed the settlement agreement or deed.

The Ottomans were judicially estopped from making these factual assertions. At a December 2009 bankruptcy court hearing, Roger Ottoman testified that Slotnick was representing the Ottomans in an ongoing court action regarding the foreclosure of their home. He asserted that the parties had reached a settlement in that action, allowing the Ottomans to remain in the home for two years rent-free. By admitting the Ottomans consented to the settlement agreement, Roger Ottoman necessarily admitted that the Ottomans agreed to the settlement terms. Those terms included the Ottomans' promise to sign a quitclaim deed and place it in escrow. The bankruptcy court accepted Roger Ottoman's testimony as true. It granted the Chapter 7 trustee's motion to list the rent forbearance as an asset of the bankruptcy estate. After successfully advancing their claim, the Ottomans now want to take a "wholly inconsistent" position, denying the settlement agreement and connected quitclaim deed even though they admitted the validity of these documents before. See *Wells Fargo Bank*, 304 Mich App at 537 (cleaned up). The Ottomans would undoubtedly "derive an unfair advantage if not estopped," allowing them to advance provably false allegations that contradict Roger Ottoman's sworn testimony from over a decade earlier. *Riverview-Trenton R Co*, 332 Mich App at 594-595 (cleaned up). Judicial estoppel bars this maneuver.

In sum, the unappealed 2012 district court and 2020 bankruptcy court opinions settled the questions of ownership and fraud. Those opinions have res judicata and collateral estoppel effect. Judicial estoppel also precludes the Ottomans from denying that they signed the settlement agreement and quitclaim deed because that position is contradictory to the successful position they raised in 2009 in the bankruptcy case. The circuit court correctly dismissed the Ottomans' claims,

---

[7] Remarkably, despite the Ottomans' attestations that Slotnick never represented them in circuit court, paragraph 12 of their complaint states the exact opposite.

granted summary disposition in favor of the Hakalas and the RLDG defendants, and quieted title in the Hakalas' favor.[8]

## III. SANCTIONS

The Ottomans also challenge the circuit court's imposition of sanctions for filing a frivolous suit.

We review a circuit court's factual findings, "including a finding of frivolousness," for clear error. *Peterson v Oakwood Healthcare, Inc*, 336 Mich App 333, 341; 970 NW2d 389 (2021). Clear error exists "when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. "To the extent that the trial court had discretion to order a sanction," we review its decision for an abuse of discretion. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 18.

MCL 600.2591(1) governs sanctions for the filing of a frivolous action:

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

There is no dispute that the RLDG defendants were the prevailing parties in the circuit court. See MCL 600.2591(3)(b) (defining "prevailing party" as "a party who wins on the entire record."). An action is "frivolous" when one or more of the circumstances below exist:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

Our court rules also authorize sanctions for the filing of frivolous documents. As we recently explained,

> When a party or lawyer signs a document filed with the court, the party's signature constitutes certification that "he or she has read the document," that, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document [was] well grounded in fact and [was] warranted by existing law or a

---

[8] Given our resolution of these issues, we need not consider the Ottomans' challenges to summary disposition based on the factual support for their claims.

-10-

good-faith argument for the extension, modification, or reversal of existing law," and that the "document [was] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." MCR 1.109(E)(5). If the trial court finds that a document was signed in violation of MCR 1.109(E)(5), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." MCR 1.109(E)(6). [*Tolas Oil*, ___ Mich App at ___ ; slip op at 18.]

"Whether a claim was frivolous must be determined using an objective standard considering the circumstances concerning the claim at the time it was asserted." *Id*. "The purpose of imposing sanctions for asserting frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (cleaned up).

In this case, within their motion for summary disposition, the RLDG defendants requested sanctions for the Ottomans' violations of MCR 1.109(E)(5).[9] The RLDG defendants contended that the Ottomans' complaint was frivolous at its inception and that the Ottomans persisted in pursuing frivolous claims despite several requests that they dismiss this action. The circuit court sanctioned the Ottomans for attorney fees and costs incurred by the RLDG defendants *after* the 2020 opinion by the bankruptcy court. The circuit court did not cite the statutory provision or court rule that it relied on to justify sanctions. That said, because the RLDG defendants sought sanctions under MCR 1.109 and the circuit court limited the temporal scope of its award, the court necessarily found that it was frivolous for the Ottomans to continue pursuing their lawsuit after the bankruptcy court issued its opinion.[10]

We are not definitely and firmly convinced that the trial court erred by finding that sanctions were appropriate. The Ottomans' continued filing of documents in defense of their lawsuit after the 2020 bankruptcy opinion violated MCR 1.109(E)(5) because the Ottomans' arguments were not "well grounded in fact" and were not "warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." MCR 1.109(E)(5)(b). As discussed, despite admitting knowledge of the settlement agreement (and necessarily of the quitclaim deed referred to in the settlement agreement) at a 2009 bankruptcy court hearing and through their attorney in the 2012 district court hearing, the Ottomans never claimed they had not signed these documents. The district court found no triable issue and granted possession of the property to RLDG. Four years later, in 2016, the Ottomans found an expert who believed their signatures on the 2010 quitclaim deed were forged. The Ottomans waited another two years to

---

[9] The Hakalas also requested sanctions in their motion for summary disposition, but as represented at oral argument, they ultimately declined to pursue sanctions.

[10] In its award of sanctions in favor of the RLDG defendants, the circuit court held the Ottomans' attorney personally responsible for paying 30% of the award, with the Ottomans responsible for the remaining 70%.

file suit claiming fraud. On the heels of the Hakalas and the RLDG defendants filing summary disposition motions, the Ottomans reopened their bankruptcy case and secured a stay of the circuit court proceedings. Although the Ottomans complain that the bankruptcy court should not have resolved the factual issues underlying the fraud claim, the Ottomans were the ones who raised the fraud allegations in the bankruptcy court. RLDG's counsel warned the Ottomans' counsel early in the proceedings that the Ottomans' claims were barred by res judicata and collateral estoppel. The Ottomans insisted on pursuing their claims and continued to do so despite the bankruptcy court's resolution of the issues. If there had once been any doubt, the bankruptcy court opinion reinforced that the Ottomans' claims were barred by the doctrines of res judicata and collateral estoppel. Thus, the circuit court did not err in sanctioning the Ottomans.

We affirm. RLDG, Glass, Nichols, and the Hakalas, as the prevailing parties, may tax costs under MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett